**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Candido ALVAREZ,**
**Defendant–Appellant.**

**No. 89–1384.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1991.

Decided March 8, 1991.

---

Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Detroit, Mich., James A. Brunson, Michael Hluchaniuk, Asst. U.S. Attys., Bay City, Mich., for plaintiff-appellee.

R. Steven Whalen (argued), Detroit, Mich., for defendant-appellant.

Before MARTIN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Candido Alvarez appeals his jury conviction for conspiracy to distribute over five kilograms of cocaine, a Schedule II controlled substance; possession with intent to distribute cocaine; and interstate travel in aid of racketeering, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 1952(a)(3), respectively. For the following reasons, we affirm.

The events which lead to Alvarez's arrest are as follows: On April 21, 1988, Drug Enforcement Administration agents Renee Triplett and James O'Brien, both stationed at the Detroit Metropolitan Airport, observed Gilberto Estevez get off a Northwest flight from Miami. Estevez was carrying a duffel bag. Estevez walked up to Alicio Sanchez, who had been waiting at the terminal, nodded slightly in recognition, and the two walked away together. The two proceeded to leave the airport without ever speaking to one another.

After the two men left the terminal, Agent Triplett approached Estevez and asked if she could speak with him. Agent Triplett further requested that she be permitted to look inside Estevez's duffel bag. Estevez held out the bag and allowed Agent Triplett to inspect its contents. Under some clothing was a package of suspected cocaine. Estevez then threw the bag at Agent Triplett and attempted to run away. Both he and Sanchez were quickly apprehended. A second search of Estevez's bag revealed another package of cocaine.

Estevez told the authorities that he had obtained the cocaine in Miami before departing for Detroit. He was instructed by Candido Alvarez to meet Alicio Sanchez at the Detroit airport and then return to Miami. Estevez also told authorities that he had carried cocaine from Florida to Michigan on at least five other occasions between July 1987 and April 1988; twice by car and three times by plane. Estevez indicated that on one occasion Alvarez paid him $3,000 dollars for bringing three kilograms of cocaine up from Florida. This information lead to an investigation which linked Alvarez to a drug trafficking operation engaged in transporting large amounts of cocaine from Florida to the Flint, Michigan area.

Several search warrants were executed at the residences utilized by Alvarez and his co-conspirators. These searches yielded cocaine, guns, drug paraphernalia, beepers, bank records and currency.

Based upon the information uncovered by this investigation, Alvarez and his co-conspirators were indicted by a federal grand jury. The trial of Candido Alvarez and one of his co-conspirators, Felix Santana, began on December 8, 1988. On December 27, the jury found Alvarez guilty as charged in all counts of the indictment. Alvarez was sentenced to two hundred and thirty-five months of incarceration. While months are utilized by the Sentencing Commission to refer to the possible length of imprisonment in the sentencing table, possibly for reasons of easier calculation, most criminal defendants look to the number of years to be served. Here, Alvarez will serve approximately nineteen and a half years followed by five years of supervised release. This appeal followed.

■ Alvarez raises a number of issues on appeal. Alvarez first argues that his right to a fair trial and to due process were violated because of the prosecutorial mis-

conduct. Specifically, Alvarez claims that the United States Attorney gave an improper opening statement and sought to introduce hearsay during trial. In his opening statement, the United States Attorney stated:

If you had been—could have been at several different locations on or about the 24th or 25th of August, 1988, and taken part with members of the Federal Drug Enforcement Administration task force, you would have seen by virtue of your observing the simultaneous or near simultaneous—

Defense counsel objected to this statement and the court admonished the United States Attorney in open court. Thereafter, defense counsel moved for a mistrial based upon this statement which was denied by the court. "Improprieties in counsel's arguments to the jury do not require a new trial unless they 'are "so gross as probably to prejudice the defendants," and any resulting prejudice is not "neutralized" by the court's instructions.'" *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988) (quoting *United States v. Flake*, 746 F.2d 535 (9th Cir.1984)).

This statement, standing alone, is not so harmful as to "probably prejudice" Alvarez. First, both the United States Attorney and the court explained to the jury that statements of an attorney are not evidence. Furthermore, the court admonished the government for "dramatizing" in front of the jury. Consequently, the government's erroneous statement does not require a new trial.

■ Alvarez next complains that the government injected hearsay and prejudicial information before the jury. During the course of trial, the government attempted to introduce into evidence a search warrant and an accompanying affidavit which contained numerous hearsay statements. At another point in the trial, the government attempted to elicit information from a witness which was obtained through a conversation with another individual. The record indicates that the court sustained all proper objections to hearsay testimony and instructed the jury not to draw any negative inferences from any objections by the defendants as to any evidence being offered by the government. The government may have exercised poor judgment in attempting to introduce some particular items into evidence; on one occasion, referring to the affidavit accompanying the search warrant, the court commented, "I don't think there is any possible excuse for offering a document like this." However, we do not think this resulted in a "trial setting that [was] fundamentally unfair." *See Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.), *cert. denied*, 464 U.S. 951, 962, 104 S.Ct. 367, 396, 78 L.Ed.2d 327, 338 (1983).

■ Alvarez next argues that the district court erred in imposing a two-level enhancement under the Sentencing Guidelines § 3C1.1 for "obstruction of justice." Section 3C1.1 provides:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov.1989).[1] The commentary to § 3C1.1 explains that where a defendant testifies untruthfully concerning a material fact, he should be deemed obstructing justice and the two level enhancement should apply. *Guidelines Manual*, § 3C1.1, Comment. (n. 1(c)). However, the commentary also cautions that, "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right. *A defendant's denial of guilt is not a basis for application of this provision.*" *Id.* at (n. 3) (emphasis added).

The district court found that Alvarez, while under oath, "did, indeed, lie. He lied

---

1. Section 3C1.1 has been substantially amended, effective November 1, 1990. *See* United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov. 1990). Because Alvarez was sentenced before the effective date of the amendment, we limit our discussion to the pre-amended version of § 3C1.1. applicable at that time.

openly, continuously, almost ridiculously before the jury." We review the factual findings which underlie a district court's decision as to the applicability of an enhancement provision under a clearly erroneous standard. *United States v. Moreno,* 899 F.2d 465, 470 (6th Cir.1990) (citing *United States v. Perez,* 871 F.2d 45, 48 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989)). There is ample evidence in this record to support this determination by the district court.

■ The district court expressed some reservation about applying § 3C1.1 in this case because it felt that Alvarez's testimony was, in some respects, a denial of his guilt and that his sentence was severe enough without the two-level enhancement. However, having made the finding that Alvarez testified untruthfully as to a material fact while under oath, the district court had no discretion under the Sentencing Guidelines in applying § 3C1.1. The court did have discretion, however, if its findings of fact supported a downward departure. *See United States v. Brewer,* 899 F.2d 503 (6th Cir.1990). The record in this case does not contain any facts which would have supported such a departure. *See* 18 U.S.C. § 3553(b) (Courts must impose sentence specified in the guidelines unless there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission). Many of the district court's reservations about applying § 3C1.1 were addressed by this court in *United States v. Acosta–Cazares,* 878 F.2d 945 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989), where we explained:

> there is no constitutional right to testify untruthfully at trial. A defendant denies his guilt by pleading "not guilty" while not under oath. There is, however, no constitutional right to commit perjury either as a defendant testifying in his or her own behalf or as a witness testifying before a grand jury.

*Id.* at 952 (citations omitted). We, therefore, find that the district court's application of § 3C1.1 was entirely appropriate.

■ Alvarez also argues that the district court erred in imposing a four-level enhancement under Sentencing Guidelines § 3B1.1(a) for being an organizer or leader of an operation involving five or more individuals. This Court reviews factual findings by the district court as to a § 3B1.1(a) enhancement only for clear error. *United States v. Barrett,* 890 F.2d 855 (6th Cir. 1989). The district court found that Alvarez was the "clear leader" of a conspiracy which involved, "the use of stepson [Joaquine Diaz, Jr.] and his wife [Alice Alvarez] for distribution, ... his real estate, his vehicle, ...." Trial testimony established that Gilberto Estevez and Alicio Sanchez were involved in transporting the cocaine from Miami to eastern Michigan. Trial testimony further established that Reinaldo Cubilla was also involved in the drug operation. This testimony provides ample evidence to support the finding that Alvarez was a leader of an operation involving five or more individuals. Accordingly, we find no error in the enhancement of the sentence pursuant to § 3B1.1.

After consideration of Alvarez's remaining arguments we find them to be meritless.

The judgment of the district court is affirmed.