968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Claude HALL, Sr., Donna Hall, and Claude Hall, Jr.,
Defendants-Appellants.
 Nos. 91-5988, 91-5989 and 91-5990.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1992.
 
 Before KEITH and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants bring this consolidated appeal to challenge their convictions for violating an assortment of drug trafficking and firearm laws. Finding no merit to their assignments of error, we affirm.
 
 
 2
 * On September 10, 1990, Dean Craft, a trooper with the Kentucky State Police, received an anonymous tip that a large quantity of marijuana was being grown in the open fields of a hollow behind the home of Claude Hall, Sr., and Donna Hall and that the crops were controlled by the Halls. Acting on the tip, the troopers raided the hollow and seized more than 4,500 marijuana plants, most of which were located on land owned by the Halls. Four explosive traps were also discovered.
 
 
 3
 A warrant was then issued to search the Halls' residence and various appurtenant outbuildings. The troopers found three pounds of processed marijuana in the Halls' basement, jars of marijuana seeds in their garage, and dried marijuana stalks in one of their sheds.
 
 
 4
 In April 1991 an eight-count indictment was returned against four of the Halls: Claude, Sr., and his wife, Donna; and Claude, Jr., together with his spouse, Sandra. Each was charged with (1) conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846; (2) knowingly and intentionally manufacturing a Schedule I controlled substance in violation of 21 U.S.C. § 841(a)(1); (3) aiding and abetting the manufacture of an illegal substance in violation of § 841 and 18 U.S.C. § 2(a) & (b); (4) unlawfully possessing a destructive device in breach of 26 U.S.C. §§ 5861(d) & 5871; and (5) use of a destructive device during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).
 
 
 5
 A jury found Claude, Sr., and Claude, Jr., guilty on all eight counts, Donna guilty on Counts 1-4, and Sandra was acquitted on all counts. Claude, Sr., was sentenced to 322 months of incarceration, Donna received four concurrent 324 month sentences, and Claude, Jr., received 340 months in prison.
 
 II
 A.
 
 6
 The Halls claim that the search warrant issued on Claude, Sr.'s residence and outbuildings lacked probable cause. On review, our duty "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.' " Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). To this end, we employ a totality-of-the-circumstances test. Specifically, this test provides, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. The Supreme Court has upheld the issuance of a warrant, where even though the tip failed to reveal the basis of its author's knowledge, Gates, 462 at 227; the substantial, albeit partial, corroboration of its contents by the police supported the magistrate's determination that there was probable cause. Id. at 243.
 
 
 7
 In support of the request, for the search warrant, state trooper Dean Craft swore out an affidavit reporting the anonymous tip regarding (1) the marijuana patches and (2) the control of Claude, Sr., and Claude, Jr., over those patches. Craft also gave details of the raid that corroborated the first of the anonymous informant's assertions. Commissioner Combs issued the requested search warrant. Upon review of the affidavit, we believe that the magistrate had before him sufficient information to conclude that a fair probability of evidence of a crime would be found. Furthermore, as in Gates, Trooper Craft's substantial corroboration of the anonymous tip was sufficient to support Commissioner Combs's finding of probable cause.
 
 B
 
 8
 The Halls submit that testimony on marijuana cultivation elicited by the government from expert witness Officer James A. Tipton was irrelevant and inflammatory. Tipton provided information on conventional marijuana growing practices, the amount of profit a grower might realize, and the market for marijuana in eastern Kentucky.
 
 
 9
 Discerning the boundaries of expert testimony is traditionally a matter for the sound discretion of the trial court. Salem v. United States Lines Co., 370 U.S. 31, 35 (1962); United States v. Vance, 871 F.2d 572 (6th Cir.), cert. denied, 493 U.S. 933 (1989). The court's discretion is broad and its exercise "will not be disturbed on appeal unless it is manifestly erroneous." United States v. Brown, 557 F.2d 541, 556 (6th Cir.1977).
 
 
 10
 The test for admissibility of expert testimony is set forth in Fed.R.Evid. 702, which provides:
 
 
 11
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 12
 This court has propounded a four-part test for adjudging the admissibility of expert testimony under Rule 702: (1) a qualified expert, (2) testifying on a proper subject, (3) in conformity to a generally accepted explanatory theory, (4) the probative value of which outweighs any prejudicial effect. United States v. Green, 548 F.2d 1261, 1268 (6th Cir.1977). The Halls' objection focuses on the fourth prong of the Green test.
 
 
 13
 The Halls unduly diminish the probative value of Tipton's testimony by describing it as irrelevant. For example, Tipton translated a calendar found in the Halls' residence, noting that the letters "MG" often refer to Miracle Grow, a fertilizer frequently used in marijuana cultivation. Rule 702 permits expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." Such information about "MG" may well have been of assistance to the trier of fact.
 
 
 14
 So too with Tipton's commentary regarding common and public sources of information about marijuana growing or the number and type of seeds found among large growers of pot. These are relevant facts potentially of assistance to those who must determine the fate of the Halls. Under Green, we cannot say that the admission of Tipton's testimony was manifestly erroneous.
 
 C
 
 15
 Claude, Sr., argues that the district court committed reversible error by cutting off the questioning of his daughter, Quindore Hall, who would have testified to Claude Sr.'s physical infirmities. Such infirmities presumably would have been used to show a physical inability to tend the marijuana crops.
 
 
 16
 Claude, Sr., relies on United States v White, 932 F.2d 588 (6th Cir.1991). In White, the defendant was convicted for possession with intent to distribute marijuana after police discovered a marijuana patch growing behind his mobile home. His conviction was reversed because, inter alia, his physical infirmities would have prevented him from cultivating a marijuana crop.
 
 
 17
 White is inapposite. Claude, Sr., unlike the White defendant, was convicted of conspiracy and aiding and abetting, crimes which could have been committed in spite of the effects of his stroke. Furthermore, testimony regarding Claude, Sr.'s, physical condition was admitted. Claude, Sr., and his wife both testified about his stroke and its effects. Although his daughter's testimony was eventually cut off, she did give testimony relating to his stroke and subsequent hospitalization. In light of the limited probative value of this evidence, any error in preventing Quindore from testifying was harmless.
 
 D
 
 18
 Five months after raiding the marijuana fields, the police searched a trailer belonging to Johnny Jacobs, Claude, Sr.'s, son-in-law, and found several prescription bottles containing marijuana seeds and bearing Claude, Sr.'s, name, as well as a number of bags of marijuana. This evidence was admitted at trial over Claude, Sr.'s, objection. Claude, Sr. contends that because the evidence was discovered five months after the conspiracy, the potential for prejudice outweighed its probative value. Therefore, the evidence was inadmissible under Federal Rule of Evidence 403.
 
 
 19
 A district court's determination that potential prejudice does not outweigh probative value will be reversed only if it constitutes an abuse of discretion. United States v. Blakeney, 942 F.2d 1001, 1018 (6th Cir.1991), cert. denied, 116 L.Ed.2d 785 (1992).
 
 
 20
 Even if this court agreed that the objection should have been sustained, given the overwhelming evidence of guilt against the defendants, we conclude that the error was harmless. See Pope v. Illinois, 481 U.S. 497, 502-03 (1987) ("a conclusion should be affirmed where a reviewing court can find that the record developed at trial established guilt beyond a reasonable doubt").
 
 E
 
 21
 Donna Hall contends that her convictions were not supported by sufficient evidence. Our review of such claims asks "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are obliged to assess the evidence in the light most favorable to the government. United States v. Zackert, 783 F.2d 677, 678 (6th Cir.1986) (per curiam).
 
 
 22
 Many of the plots on which the marijuana patches were planted were owned by Claude, Sr., and Donna. Moreover, three pounds of marijuana was discovered in the basement of their residence. At the very least, Donna constructively possessed this marijuana. See United States v. White, 932 F.2d 588, 589 (6th Cir.1991) (constructive possession established where defendant exercises ownership, dominion, or control over contraband or property on which it is located). In addition, she made cash purchases of expensive items, such as a large screen television and camcorder, which can be taken as evidence of involvement in the drug trade. See United States v. Wood, 834 F.2d 1382, 1386 (8th Cir.1987). Donna and Claude, Sr.'s, residence was also strewn with magazines and other information relating to the cultivation of plants generally and marijuana in particular as well as a handwritten notation relating to the cultivation of marijuana. This evidence is certainly sufficient to sustain Donna Hall's conviction.
 
 F
 
 23
 At sentencing the district court assessed a two-point "obstruction of justice" enhancement to each of the Hall's base offense levels pursuant to U.S.S.G. § 3C1.1 application note 3(b), on the grounds that their testimony at trial denying any knowledge of the conspiracy was untruthful. Donna Hall and Claude, Sr., argue that this places an "intolerable burden" on their Fifth Amendment rights, citing United States v. Dunnigan, 944 F.2d 178 (4th Cir.1991), cert. granted, 60 U.S.L.W. 3600 (U.S. May 26, 1992) (No. 91-1300). Dunnigan, however, is not the law of our circuit. Application note 1 of U.S.S.G. § 3C1.1 provides that "A defendant's denial of guilt (Other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision." (emphasis added).[1] Since the Halls' denial of guilt was made under oath, thereby constituting perjury, see United States v. Pandozzi, 878 F.2d 1526, 1533 (1st Cir.1989), the district judge was required to assess a two-point obstruction of justice enhancement. See United States v. Alvarez, 927 F.2d 300, 302-03 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991).
 
 
 24
 As to the Halls' protest that this unduly interferes with their right to testify in their own behalf, we note that this right does not include the right to commit perjury. See United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.). cert. denied, 493 U.S. 899 (1989). See also, United States v. Grayson, 438 U.S. 41, 54 (1978) (pre-guideline case holding that sentencing judge may consider a defendant's perjurious testimony and that increasing the sentence within the applicable statutory limit on the grounds did not violate defendant's right to testify on own behalf).
 
 G
 
 25
 The Halls complain that their sentences are excessive given their personal circumstances, such as age and physical condition. So long as the sentence given is within the applicable guidelines range, however, we will not compel a district judge to depart downward from that range. E.g., United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989). The Halls also contend that their sentences violate their Eighth Amendment rights because they are disproportionate to the offense. For noncapital sentences, the Eighth Amendment at most "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 115 L.Ed.2d 836, 869 (1991) (Kennedy, J., concurring). In Harmelin, the Supreme Court upheld a mandatory sentence of life imprisonment without the possibility of parole for a first time offender who was convicted of possessing with intent to distribute 672 grams of cocaine. Id. at 864-65. The Supreme Court has also upheld a forty year sentence for possession with intent to distribute nine grams of marijuana. Hutto v. Davis, 454 U.S. 370 (1982). Under these precedents, the Halls' sentences, none of which exceeds thirty years, are plainly proportional to their crime.
 
 
 26
 For the foregoing reasons, we affirm.
 
 
 
 [1]
 Application note 1 was adopted as part of the November 1990 amendments to the guidelines (Since the Halls were sentenced in August 1991 the amendments apply to them.) Under the previous commentary to section 3C1.1, the relevant application note (note 3) provided, "A defendant's denial of guilt is not a basis for application of [section 3C1.1]." The adoption of the language in current application note 1, transcribed in the text above, was clearly intended to apply to precisely the sort of testimony given by Claude, Sr., and Donna Hall. The sentence in Dunnigan was rendered prior to the November 1990 amendments, which severely undermines its persuasive authority