1 F.3d 1243
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dallas Elry VOYLES, Defendant-Appellant.
 No. 92-5991.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1993.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Dallas Elry Voyles challenges his drug trafficking and firearm convictions, and the obstruction of justice enhancement to his sentence. We affirm Voyles' convictions and sentence for the following reasons.
 
 I.
 
 2
 In early 1992, a confidential informant advised Special Agent Joe Copeland ("Agent Copeland") of the Tennessee Bureau of Investigation that Mary Borner ("Borner") was attempting to obtain quantities of Dilaudid (hydromorphone). Posing as a drug dealer, Agent Copeland contacted Borner.
 
 
 3
 On March 5, 1992, Borner informed Agent Copeland that individuals she knew were looking to purchase 1,000 Dilaudid pills. Agent Copeland agreed to sell the pills at $15 per pill. Borner subsequently contacted Agent Copeland to explain that the individuals she knew could afford only 500 Dilaudid pills, but that they hoped to become "regular customers." All parties agreed to conduct the transaction the following day at the Burger King restaurant in Cleveland, Tennessee.
 
 
 4
 Shortly before 7:00 p.m. on March 6, 1992, undercover agents from the Drug Enforcement Administration and the Tennessee Bureau of Investigation observed Borner riding in a blue and white Ford Bronco driven by defendant Thomas Christmas ("Christmas"). Christmas and Borner pulled into a gas station near the Burger King where they were joined by a man, later identified as defendant-appellant Dallas Voyles ("Voyles"), driving a yellow van. Borner and Christmas then drove together to the Burger King parking lot and parked adjacent to Agent Copeland. Voyles drove to the Burger King parking lot and backed into an available space in a manner that would allow him to witness the transaction.
 
 
 5
 Borner and Christmas exited their vehicle and met with Agent Copeland while Voyles remained in his van with most of the cash and a gun. Christmas informed Agent Copeland that Voyles needed to see the drugs before any money changed hands. Agent Copeland, in turn, informed Christmas that he would not relinquish the drugs until he had the cash, but agreed to show Christmas the 500 Dilaudid pills. At that point, Christmas handed $1,600 in cash to Agent Copeland and asked if Agent Copeland would be willing to hold the cash while Christmas walked the bottle of pills over to Voyles' van. Agent Copeland watched Christmas walk to Voyles' van and emerge with the additional cash. After Christmas and Agent Copeland completed the exchange, Agent Copeland signaled other law enforcement agents to move in and arrest Borner, Christmas and Voyles.
 
 
 6
 Officer Brent Clayton ("Officer Clayton") of the Drug Enforcement Administration Task Force pulled his vehicle (with blue lights flashing) directly in front of Voyles' van. Officer Clayton exited his vehicle, identified himself, and directed Voyles to raise his hands where they could be seen. Voyles, however, reached for his pistol and, noting that Officer Clayton had his gun pointed directly at him, slipped the pistol into his jacket pocket and exited the van. After handcuffing Voyles, Officer Clayton removed the fully-loaded Browning .25 caliber semi-automatic pistol from Voyles' pocket. Borner and Christmas were arrested without incident. Borner subsequently pled guilty to a one-count information charging her with conspiracy to possess with intent to distribute Dilaudid in violation of 21 U.S.C. Sec. 846.
 
 
 7
 On March 11, 1992, the grand jury returned a four-count indictment against Christmas and Voyles:
 
 COUNT 1
 
 8
 The Grand Jury charges that on or about March 5, 1992 and March 6, 1992, in the Eastern District of Tennessee and elsewhere, defendants DALLAS ELRY VOYLES and THOMAS CHRISTMAS, also known as TOMMY, and other persons known to the Grand Jury did wilfully, knowingly, intentionally, and without authority, combine, conspire, confederate and agree with each other to commit a violation of 21 U.S.C. Sec. 841(a)(1), that is to possess with the intent to distribute hydromorphone (Dilaudid), a Schedule II narcotic controlled substance, [in violation of] 21 U.S.C. Sec. 846.
 
 COUNT 2
 
 9
 The Grand Jury further charges that on or about March 6, 1992, in the Eastern District of Tennessee, DALLAS ELRY VOYLES and THOMAS CHRISTMAS, also known as TOMMY, aided and abetted by one another, did wilfully, knowingly, intentionally, and without authority attempt to possess with the intent to distribute hydromorphone (Dilaudid), a Schedule II narcotic controlled substance, [in violation of] 21 U.S.C. Secs. 846 and 841(a)(1) and 18 U.S.C. Sec. 2.
 
 COUNT 3
 
 10
 The Grand Jury further charges that on or about March 6, 1992, within the Eastern District of Tennessee, the defendants, DALLAS ELRY VOYLES and THOMAS CHRISTMAS, also known as TOMMY, did knowingly and intentionally use and carry a firearm, namely, a Browning .25 caliber semi-automatic pistol bearing serial number 285999, during and in relation to a violation of 21 U.S.C. Sec. 846, that is, the drug trafficking crime set out in count 1 of this indictment, [in violation of] 18 U.S.C. Sec. 924(c).
 
 COUNT 4
 
 11
 The Grand Jury further charges that on or about March 6, 1992, in the Eastern District of Tennessee, the defendant, DALLAS ELRY VOYLES, having previously been convicted of the following felony offenses:
 
 
 12
 On or about March 16, 1984, in the Criminal Court of Roane County, Tennessee, of the offense of possession of Schedule I drugs for resale;
 
 
 13
 On or about March 16, 1984, in the Criminal Court of Roane County, Tennessee, of the offense of possession of Schedule II drugs for resale;
 
 
 14
 On or about March 16, 1984, in the Criminal Court for Roane County, Tennessee, of the offense of possession of Schedule IV drugs for resale;
 
 
 15
 On or about March 16, 1984, in the Criminal Court for Roane County, Tennessee, of the offense of distributing of Schedule VI drugs;
 
 
 16
 all of which are punishable by a term of imprisonment of more than one year, did knowingly possess in commerce and affecting commerce, a firearm, to-wit, one Browning .25 caliber semi-automatic pistol bearing serial number 285999, [in violation of] 18 U.S.C. Sec. 922(g)(1).
 
 
 17
 March 11, 1992 Indictment at 1-3.
 
 
 18
 Trial commenced on April 29, 1992. Though Christmas and Voyles testified that they drove to Cleveland, Tennessee, to purchase two vehicles, the jury rejected their testimonies and returned guilty verdicts against both defendants on all four counts of the indictment.
 
 
 19
 On May 26, 1992, the district court judge sentenced Christmas to 88 months imprisonment for each drug trafficking conviction (to be served concurrently), and to 60 months imprisonment for the 18 U.S.C. Sec. 924(c) conviction (to be served consecutively to the drug trafficking convictions), resulting in a 148-month sentence, to be followed by six years of supervised release.
 
 
 20
 On July 6, 1992, the district court judge sentenced Voyles to 88 months imprisonment for the drug trafficking and 18 U.S.C. Sec. 922(g)(1) convictions (to be served concurrently), and to 60 months imprisonment for the 18 U.S.C. Sec. 924(c) conviction (to be served consecutively to the drug trafficking and 18 U.S.C. Sec. 922(g)(1) convictions), resulting in a 148-month sentence, to be followed by six years of supervised release.
 
 
 21
 Voyles thereafter filed a timely notice of appeal.
 
 II.
 
 22
 The District Court Judge's Questioning of Voyles
 
 
 23
 Christmas and Voyles testified that they travelled to Cleveland, Tennessee, on March 6, 1992, to purchase a four-wheel drive truck and an all-terrain vehicle for $8,000. Specifically, Voyles testified that he agreed to loan Christmas the cash to purchase the vehicles, but noted that he was participating in the transaction to purchase the all-terrain vehicle for his grandson. Voyles further testified that, in order to secure the loan, he had prepared a promissory note which listed the all-terrain vehicle as collateral. The district court judge, noting an inconsistency in Voyles' testimony, took it upon himself to question Voyles further:
 
 
 24
 [PROSECUTOR]: That's all on cross, Your Honor.
 
 
 25
 THE COURT: Mr. Voyles, you were buying this ATV, right?
 
 
 26
 THE WITNESS: Sir?
 
 
 27
 THE COURT: You were buying the ATV four-wheel off-road vehicle?
 
 
 28
 THE WITNESS: Actually, sir, I was loaning the money for Tommy to buy the ATV and the truck.
 
 
 29
 THE COURT: I thought you were--
 
 
 30
 THE WITNESS: I was interested in getting the ATV, and after we got them back home, I was going to try to make a deal to probably take some of the money off the note, you know, and then I was interested in the ATV, but not the truck, because my son had just bought one about three or four weeks before.
 
 
 31
 THE COURT: But several weeks before you had expressed an interest in buying an ATV, so that's why you were doing this, right?
 
 
 32
 THE WITNESS: Yes.
 
 
 33
 THE COURT: But you had the ATV, though, as collateral for this loan?
 
 
 34
 THE WITNESS: Yes, it's on there.
 
 
 35
 THE COURT: So you're going to take the collateral on your own ATV?
 
 
 36
 THE WITNESS: On my what, sir?
 
 
 37
 THE COURT: You were going to have collateral on your own ATV? The ATV that you're going to own was going to be collateral for this note?
 
 
 38
 THE WITNESS: No. Tommy was going to give that to me. We were going to make the deal when we got back home, see. For some reason, they didn't want me to be in on the deal, I guess because they were afraid I might take the business or something. I don't know.
 
 
 39
 THE COURT: Who's going to buy the ATV, you or Mr. Christmas?
 
 
 40
 THE WITNESS: Well, I don't really understand, but that's--
 
 
 41
 THE COURT: You or Mr. Christmas, who was going to buy the ATV?
 
 
 42
 THE WITNESS: I was going to buy the ATV.
 
 
 43
 THE COURT: So, you put on this note, though, then you were going to--you were going to have security in something that you owned already for this note, right?
 
 
 44
 THE WITNESS: Well, I don't really understand it that way, sir, but it may be that way.
 
 
 45
 THE COURT: Okay. Any other questions?
 
 
 46
 Joint Appendix at 295-97.
 
 
 47
 After the district court judge completed his questioning, Voyles' attorney requested a sidebar conference:
 
 
 48
 [VOYLES' ATTORNEY]: I don't know how to object or bring forth, I'm concerned about the questions that you just asked for this reason. You asked him what was going to happen. He said that, and with all due respect--
 
 
 49
 THE COURT: Sure.
 
 
 50
 [VOYLES' ATTORNEY]: You know, what was this transaction about, and he said, which I understood clearly and reasonably, that Tommy was going to buy them, and then when he got them home he could look at them, he was maybe going to buy it from Tommy and take something off the note, but then you went on and started saying--
 
 
 51
 [PROSECUTOR]: I didn't understand all that.
 
 
 52
 THE COURT: If you want to ask, you can ask him any questions you want to ask to straighten it out if you think it should be straightened out, but do you have any--I mean, you say you want to object, and you certainly may.
 
 
 53
 [VOYLES' ATTORNEY]: I'm concerned about it because had he been asking, I would have objected to the form of the question after the first question.... [Y]ou know, hearing how he's testifying and so forth, he's not as sophisticated as maybe other people, but I really think he meant just what he said when he answered your question the first time, which is what I understood him to say. And then, you know, he was going to get an ATV or he was interested--that's what he said. He said, well, I was interested in it.
 
 
 54
 THE COURT: If you want to, I'll let you lead him around to that if that's what he says.
 
 
 55
 Joint Appendix at 297-99.
 
 
 56
 Prior to charging the jury, the district court judge agreed to Voyles' request that Sixth Circuit Pattern Criminal Jury Instruction 8.09 ("Court Has No Opinion") be read to the jury. Accordingly, the district court judge noted:
 
 
 57
 Let me finish up by repeating something that I said to you earlier. During the trial, I asked some questions for the purpose of clarifying testimony. Nothing that I have said or done during this trial was meant to influence your decision in any way. You decide for yourself if the Government has proved the Defendant guilty, or either Defendant guilty, beyond a reasonable doubt. It is your job, not mine, to decide the facts in this case.
 
 
 58
 Joint Appendix at 320.
 
 
 59
 Though the government contends that we are precluded from addressing Voyles' first assignment of error on appeal because "Voyles objected only to the form of the questions, and not to the questioning itself," Appellee's Brief at 10, the transcript from the sidebar conference reveals that Voyles' attorney objected to the district court judge's actions and to his specific questions. We may therefore address Voyles' first assignment of error.
 
 This court has previously noted:
 
 60
 A trial judge "may ask questions and give comments upon the evidence, as he is not a mere moderator, but is in control of the trial to insure its proper conduct, so long as the comments and questions are fair and not designed to mislead." In commenting upon the evidence, the judge does not commit error simply by making a comment that may be favorable to one side. "The right of the trial judge to comment on the evidence necessarily includes the right to comment unfavorably, so long as [the] comment does not become advocacy and it is made clear to the jury that irrespective of such comment the ultimate determination of the facts is left to the jury."
 
 
 61
 United States v. Poindexter, 942 F.2d 354, 362-63 (6th Cir.) (citations omitted) (alteration in original), cert. denied, 112 S.Ct. 615 (1991). See also Glasser v. United States, 315 U.S. 60, 82 (1942) ("The court did interrogate several witnesses, but in the main such interrogation was within its power to elicit the truth by an examination of the witnesses."); United States v. Seago, 930 F.2d 482, 492 (6th Cir.1991) ("The trial judge's interjection into the trial is nevertheless common and proper when there is a need for clarification in a lengthy or complex trial, when the witness proffers incredible testimony that is not adequately probed by counsel, or when the witness has become confused."); United States v. Slone, 833 F.2d 595, 597 (6th Cir.1987) ("The presiding judge should conduct a trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. He must see that the issues are not obscured and that the testimony is not misunderstood. The trial court has the right to interrogate witnesses for this purpose.").
 
 
 62
 Because the district court judge's questions to Voyles were clearly within the judge's discretionary authority and did not deprive the appellant of his right to a fair trial, we reject Voyles' first assignment of error.
 
 Sufficiency of the Evidence
 A. Drug Trafficking Convictions
 
 63
 At the close of the government's case, and at the close of evidence, Voyles moved for a judgment of acquittal arguing insufficiency of the evidence. The district court judge denied Voyles' motion. Voyles renews this argument on appeal. "At the outset, we note that the defendant [has] a difficult burden to meet. When reviewing a denial of a motion to dismiss, we must consider all the evidence in a light most favorable to the government and then determine whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." United States v. Walton, 908 F.2d 1289, 1294 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990 (1990). See also United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984) (When reviewing a sufficiency of the evidence claim, "[t]he government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt.") (citations omitted), cert. denied, 469 U.S. 1193 (1985).
 
 
 64
 In a series of telephone calls, Borner stated that she knew individuals that wanted to purchase 500 to 1000 Dilaudid pills. Agent Copeland, working undercover, agreed to sell 500 Dilaudid pills for $8,000. Less than one hour later, Voyles withdrew $8,000 in cash from the bank. Soon thereafter, Borner told Agent Copeland that "T.C." agreed to complete the transaction in the Burger King parking lot in Cleveland, Tennessee, and later told Agent Copeland that she and "Tommy" would arrive in a blue and white Ford Bronco.
 
 
 65
 Upon arriving at Burger King, Christmas and Borner parked adjacent to Agent Copeland's vehicle while Voyles backed into a parking space across the parking lot and left his engine running. After seeing the drugs, Christmas walked to the passenger side of Voyles' van and obtained the money that he needed to pay for the Dilaudid pills. When the law enforcement officers subsequently moved in to arrest Voyles, Voyles reached for a loaded semi-automatic pistol and, realizing that the officers already had their guns drawn, slipped the gun into his pocket.
 
 
 66
 Taken in the light most favorable to the government, the evidence clearly reveals that Voyles was a knowing and willful participant in the conspiracy to obtain Dilaudid.
 
 B. Firearm Conviction
 
 67
 Voyles asserts that there was insufficient evidence to support his 18 U.S.C. Sec. 924(c) conviction. That statute provides:
 
 
 68
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.
 
 
 69
 18 U.S.C. Sec. 924(c)(1).
 
 
 70
 On appeal, Voyles asserts that "[t]he only evidence against [him] is that he was present near the scene where the transaction took place and had a gun. The presence of the gun could have been for the purpose of protecting his money with no connection to drugs." Appellant's Brief at 21. Voyles therefore maintains that his 18 U.S.C. Sec. 924(c) conviction must be reversed.
 
 
 71
 "Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony." United States v. Christian, 942 F.2d 363, 366 (6th Cir.1991) (citations omitted), cert. denied, 112 S.Ct. 905 (1992). See also United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.) (The terms " 'uses' and 'carries' should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.") (footnote omitted), cert. denied, 493 U.S. 899 (1989). "[T]he statute does not require actual physical possession of a weapon or that the defendant actually brandished the weapon in the commission of a drug offense." Id.
 
 
 72
 The evidence against Voyles is overwhelming in that he was seen reaching for, then concealing, a fully-loaded handgun as the law enforcement officers converged on his van. Accordingly, after determining that Voyles was involved in the purchase of Dilaudid pills, the jury could easily find, as it did, that Voyles possessed the gun to facilitate the transaction. See generally United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990) (a conviction under Sec. 924(c) will withstand appellate review if the possessor of a weapon intended to have it available for possible use during or immediately following the drug transaction). We therefore affirm Voyles' 18 U.S.C. Sec. 924(c) conviction.
 
 
 73
 United States Sentencing Guideline Sec. 3C1.1
 
 A. Constitutional Challenge
 
 74
 The district court judge increased Voyles' offense level by two points, pursuant to United States Sentencing Guideline Sec. 3C1.1, after determining that Voyles had lied on the witness stand:
 
 
 75
 Well, this Court heard the testimony of this Defendant, along with his Co-Defendant. And it's this Court's conclusion that this Defendant, along with his Co-Defendant, lied on the witness stand. As a result of that, he is entitled to a two-level increase under Section 3C1.1. His testimony that he was in Cleveland, Tennessee, to buy vehicles was patently false.
 
 
 76
 The Defendant has a right to tell his story, but if he tells a false story, he pays the price under the sentencing guidelines. A criminal Defendant has no constitutional right to commit perjury in this court or any other court. So, he gets two points for obstruction.
 
 
 77
 Joint Appendix at 321-22.
 
 
 78
 Voyles claims that the district court erred by enhancing his sentence for obstructing justice. The United States Sentencing Guidelines provide:
 
 
 79
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 80
 U.S.S.G. Sec. 3C1.1. The commentary to this provision provides (in relevant part):
 
 
 81
 1. This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.
 
 
 82
 ....
 
 
 83
 3. The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
 
 
 84
 ....
 
 
 85
 (b) committing, suborning, or attempting to suborn perjury[.]
 
 
 86
 U.S.S.G. Sec. 3C1.1, comment. (n. 1, 3).
 
 
 87
 On appeal, Voyles argues that United States Sentencing Guideline section 3C1.1 is unconstitutional. Alternatively, Voyles claims that the district court erred by increasing his offense level pursuant to section 3C1.1 because "[a]ll the defendant is here doing is denying that he committed the offense. His testimony does not impede or obstruct justice any more than his insistence of innocence and silence during the trial [because] he did not take steps to hide evidence or make it more difficult for the Government to present [its] case. He merely insisted on his innocence." Appellant's Brief at 16-17.
 
 
 88
 Noting that "a defendant's right to testify is not a license to commit perjury," United States v. Warren, 973 F.2d 1304, 1309 (6th Cir.1992), this court upheld the constitutionality of United States Sentencing Guideline section 3C1.1:
 
 
 89
 The Fourth Circuit seemed to find section 3C1.1 unconstitutional because "it placed an intolerable burden upon the defendant's right to testify in his own behalf." However, our [previous decision] to the contrary is in harmony with the rule in six other federal circuits.
 
 
 90
 United States v. Warren, 973 F.2d at 1309 (citations omitted).
 
 
 91
 Because a panel of this court cannot overrule the decision of a previous panel, Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985), we must reject Voyles' constitutionality claim.
 
 B. Substantive Challenge
 
 92
 The district court judge determined that Voyles had committed perjury by lying about his involvement in the Dilaudid transaction. Though Voyles testified that he drove to Cleveland, Tennessee, to purchase two vehicles, the jury rejected his testimony. Because the jury's decision to reject Voyles' testimony was not clearly erroneous, see United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990) ("We may not disturb the factual findings that underlie the district court's sentencing decisions unless such findings are clearly erroneous." ), section 3C1.1's enhancement provisions apply. See United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.) ("[H]aving made the finding that Alvarez testified untruthfully as to a material fact while under oath, the district court had no discretion under the Sentencing Guidelines in applying Sec. 3C1.1."), cert. denied, 111 S.Ct. 2246 (1991).
 
 
 93
 Because the district court judge properly adjusted Voyles' offense level to reflect his obstruction of justice, we reject Voyles' final assignment of error.
 
 III.
 
 94
 We AFFIRM Voyles' convictions and sentence for the aforementioned reasons.