28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph BUCCI, John Mastrogiovanni, and Michael Thompson,
Defendants-Appellants.
 Nos. 93-1477, 93-1478 and 93-1867.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1994.
 
 Before: KEITH, NORRIS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions and sentences alleging violations of the Fifth Amendment's Double Jeopardy Clause and various sentencing errors. For the reasons stated below, we AFFIRM the convictions and sentences imposed pursuant to the pre-guidelines guilty pleas of Joseph Bucci and John Mastrogiovanni. We also AFFIRM Michael Thompson's jury conviction and sentence.
 
 I. Statement of the Case
 
 2
 On April 26, 1991, a federal grand jury for the Eastern District of Michigan returned a superseding indictment charging defendants John Mastrogiovanni ("Mastrogiovanni") and Joseph Bucci ("Bucci") with conspiracy to possess with intent to distribute cocaine in violation of 18 U.S.C. Secs. 846 and 841(a)(1). The indictment stemmed from a joint state and federal investigation of the defendants' involvement in the shipping of multiple kilograms of cocaine from Florida to Michigan for distribution from 1983 to 1988. In December 1991, the grand jury returned a second superseding indictment adding defendant Michael Thompson ("Thompson") as a co-conspirator.[1]
 
 
 3
 In 1986, Mastrogiovanni and Bucci were convicted for cocaine trafficking in a Florida state court. Both defendants received and served state sentences of one year and one day. Based on their state prosecutions, Mastrogiovanni and Bucci filed a pre-trial motion to dismiss the federal second superseding indictment alleging violations of the Fifth Amendment's Double Jeopardy clause. After a hearing, the district court denied this motion. Subsequently, Mastrogiovanni and Bucci negotiated Rule 11 plea agreements and entered guilty pleas[2] to a superseding information charging them with conspiracy to possess with intent to distribute cocaine. Because the superseding information shortened the time-frame of the conspiracy, the plea agreements did not fall under the United States Sentencing Guidelines which became effective November 1, 1987. Pursuant to the pre-guidelines plea agreements, the government recommended sentences of seven years for each defendant. On March 16, 1993, in accordance with the agreements, the district court sentenced both Mastrogiovanni and Bucci to seven years incarceration.
 
 
 4
 Thompson elected to go to trial and in September 1992, his jury trial commenced. At trial, Ronald Taylor ("Taylor") testified that he kept records detailing sales of cocaine which reflected numerous sales to a man referred to as Port Huron or Port Huron Mike. Taylor identified this person as defendant Thompson.[3] Taylor testified that he sold cocaine to Thompson from 1982 until 1989. According to Taylor, he first sold Thompson 1/8 ounce amounts and later increased to 1, 2 or 4 ounces. In 1989, Thompson purchased several 6 ounce amounts and purchased kilogram amounts on 5 to 7 occasions. Taylor also indicated that his girlfriend, Tami Carol (also known as Tami Fox or Tami Carol Fox) ("Fox") separately distributed drugs to Thompson and kept records of her sales.
 
 
 5
 Fox testified that Thompson was one of Taylor's largest customers. Fox stated that she always sold multiple ounce or kilogram amounts to Thompson. Fox voluntarily surrendered her drug sales records to the FBI during the investigation of this case. Fox explained her records only reflected sales where the buyer owed money or more drugs were due. The records, which covered the years of 1985-1987, indicated that Fox personally delivered 4 kilograms and 2 ounces of cocaine to Thompson. These amounts did not include any separate sales between Taylor and Thompson nor did they reflect sales where an even exchange occurred.
 
 
 6
 On September 24, 1992, the jury found Thompson guilty of conspiracy to possess with intent to distribute cocaine. Because Thompson's participation in the conspiracy continued after the passage of the sentencing guidelines, Thompson received a guidelines sentence. Specifically, the sentencing judge held Thompson accountable for more than 5 but less than 15 kilograms of cocaine, subjecting him to a base offense level of 32. In addition, the district court enhanced Thompson's base offense level by two levels for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1. On June 15, 1993, the district court sentenced Thompson to 168 months incarceration.
 
 
 7
 All Appellants filed timely notices of appeal which were later consolidated. These appeals followed.
 
 II. Discussion
 A. No Double Jeopardy Violation Occurred
 
 8
 On appeal, Mastrogiovanni argues the Double Jeopardy Clause of the Fifth Amendment bars the federal prosecution for conspiracy. Specifically, Mastrogiovanni argues because he was prosecuted in state court for the same conduct involved in his federal prosecution, the Double Jeopardy Clause bars the successive federal prosecution. Mastrogiovanni also alludes to some improper "collusion" between federal and state authorities which resulted in his federal prosecution. We disagree.
 
 
 9
 Although the Double Jeopardy Clause forbids successive prosecutions of defendants for the same offense, U.S. Const., amend. V, see Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court has consistently held that no Fifth Amendment violation occurs where a defendant is prosecuted for the same act by both state and federal authorities. See United States v. Lanza, 260 U.S. 377, 382 (1922) ("an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each"); Abbate v. United States, 359 U.S. 187 (1959) (holding no double jeopardy violation where federal authorities prosecuted defendant after state trial on identical charges); Bartkus v. People of the State of Illinois, 359 U.S. 121, 129 (1959) (noting "[t]he Fifth Amendment's proscription of double jeopardy has been invoked and rejected in over twenty cases of real or hypothetical successive state and federal prosecution cases before this Court"); and Heath v. Alabama, 474 U.S. 82, 88 (1985) ("the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same conduct can be termed separate sovereigns.").
 
 
 10
 In Heath, the Court explained that the "States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty', not from the Federal Government." Heath, 474 U.S. at 89. The Court then further clarified that "the proposition that the State and Federal Governments may punish the same conduct 'is too plain to need more than statement.' " Id. (citing Westfall v. United States, 242 U.S. 256, 258 (1927)).
 
 
 11
 Because separate sovereigns prosecuted Mastrogiovanni, his double jeopardy argument must fail. In addition, although federal agents assisted local authorities during the initial investigating of this case, the joint investigation does not alter the above precedent holding successive prosecutions by separate sovereigns entirely proper. See e.g., United States v. Aboumoussallem, 726 F.2d 906 (2d Cir.1984); United States v. Aleman, 609 F.2d 298, 309 (7th Cir.1979), cert. denied, 445 U.S. 946 (1980); United States v. Jordan, 870 F.2d 1310 (7th Cir.), cert. denied, 493 U.S. 831 (1989).
 
 
 12
 Although case law clearly allows successive prosecutions by separate sovereigns, Mastrogiovanni argues that the Supreme Court's decision in Grady v. Corbin, 495 U.S. 508 (1990), provides a second inquiry to that employed in Blockburger. He argues the Grady "same conduct" test prohibits multiple prosecutions where successive prosecutions arise out of the same conduct even where the offenses may have different elements.
 
 
 13
 In Grady, the Court held that the Double Jeopardy Clause bars a prosecution where "to establish an essential element of the offense charged in that prosecution, [the Government] will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 521. Mastrogiovanni was charged in Florida state court with a single count of distributing cocaine in January 1986. The federal indictment charged Mastrogiovanni with participation in a conspiracy to possess with intent to distribute cocaine during the years of 1983-1989. Mastrogiovanni argues his federal prosecution impermissibly stemmed from a state investigation and included conduct common to his state prosecution.
 
 
 14
 Had Mastrogiovanni's argument not been foreclosed by the Supreme Court's decision in United States v. Felix, which reaffirmed the longstanding line of pre-Grady cases holding that "a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes," --- U.S. ----, 112 S.Ct. 1377, 1384 (1992), it is certainly foreclosed by the Court's recent decision in United States v. Dixon, which overruled Grady and reaffirmed the Blockburger elements test. --- U.S. ----, 113 S.Ct. 2849 (1993). Here, no Double Jeopardy violation occurred.
 
 
 15
 B. Mastrogiovanni and Bucci Are Not Entitled to Have Their Federal Sentences "Offset"
 
 
 16
 Although Mastrogiovanni and Bucci were both sentenced for pre-guidelines offenses and negotiated for, and received, Rule 11 plea agreements providing seven year sentences, both argue their federal sentences should be adjusted to reflect time served in state prison for drug activities "integral" to developing the federal case against them. As discussed below, this argument lacks merit for several reasons.
 
 
 17
 Initially, because the Appellants did not raise this sentencing issue below they failed to preserve this argument for appeal. See United States v. Pickett, 941 F.2d 411 (6th Cir.1991). Assuming the issue was properly before us, Appellants' argument lacks merit.
 
 
 18
 First, the sentencing guidelines do not apply to offenses committed before November 1, 1987. See, U.S.S.G. Ch. 1, Pt. A, Sec. 2, intro. comment; Sentencing Act of 1987, Pub.L. No. 100-182 Sec. 2(a), 101 Stat. 1266 (1987). Mastrogiovanni and Bucci received Rule 11 sentences for pre-guidelines offenses. Thus, no sentencing guidelines provisions apply to their sentences. Appellants' reliance on this Court's decision in United States v. Hicks, a case applying and interpreting the sentencing guidelines, therefore, is misplaced. 4 F.3d 1358 (6th Cir.1993) (remanding to district court for consideration of a sentencing guideline requiring consideration of imprisonment served for the same conduct).
 
 
 19
 Further, had the guidelines applied to the sentences at issue, the provision discussed in Hicks, U.S.S.G. Sec. 5G1.3, is inapplicable to either Appellant. U.S.S.G. Sec. 5G1.3 requires concurrent sentences where a defendant is sentenced while serving an earlier undischarged sentence imposed for the same conduct. Here, at the time of their federal sentencing, both Mastrogiovanni and Bucci had been discharged from their state sentences for several years. Thus, their Rule 11 sentences were properly imposed.
 
 
 20
 C. The Amount of Drugs Attributed to Appellant Thompson Was Proper
 
 
 21
 Appellant Thompson argues the district court erred by holding him accountable for an amount of cocaine between 5 and 15 kilograms. Thompson relies on this court's decision in United States v. Walton, which directs district courts to err on the side of caution where the amount of drugs is in dispute. 908 F.2d 1289 (6th Cir.), cert. denied, 498 U.S. 990 (1990). He argues the district court exclusively relied upon amounts recorded in Fox's notebook which did not support an amount over 5 kilograms and erred by sentencing based on undocumented higher amounts. Thompson also disputes the validity of the amounts which Fox testified to and had previously recorded in her notebook.
 
 
 22
 We will not disturb a district court's factual determination of the amount of drugs to hold a defendant accountable for unless such finding is clearly erroneous. See Walton, 908 F.2d at 1301 (citing United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989)); see also United States v. LaValley, 957 F.2d 1309, 1314 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 460 (1992).
 
 
 23
 In Walton, this court found that the guidelines do not permit holding a defendant responsible for a specific quantity of drugs "unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." 908 F.2d at 1302. Walton, however, did not alter established precedent allowing district courts to hold conspiracy defendants accountable for all drug quantities reasonably foreseeable to the defendant. See United States v. Okayfor, 996 F.2d 116 (6th Cir.), cert. denied, 114 S.Ct. 238 (1993); United States v. Medina, 992 F.2d 573 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994). Here, although the conspiracy involved hundreds of kilograms of cocaine, the district judge held Thompson accountable only for amounts attributable to him personally.
 
 
 24
 The district court found that Thompson was responsible for conspiring to possess more than 5 kilograms of cocaine. At sentencing the district court stated:
 
 
 25
 I went back over my notes of Mr. Taylor's testimony and Miss Carol's testimony, and I didn't have seven [kilograms of cocaine] but I remember that there had been one kilo--one purchase of I believe it was a kilo, and I recall another one of a kilo and a half or at least that's what my notes were when added up. And other entries in her notebook brought it to over five kilos.
 
 
 26
 Miss Carol's testimony, combined with the corroborative evidence of the notebook, was, I believe, very persuasive to the jury, and it was persuasive to me of quantities that were involved.
 
 
 27
 Whether I would be involved in discounting based on guestimates (sic) given by Mr. Taylor or Miss Carol, as to the amounts purchased afterward I don't think is relevant to this inquiry because the credible testimony which I credit from the trial was Miss Carol's testimony in corroboration with the notebook entries, which added up to more than five kilograms.
 
 
 28
 JA at p. 203.
 
 
 29
 Thompson argues the district court relied exclusively upon Fox's testimony and notebook calculations which amounted to only 4 kilograms and 2 ounces. The record reflects, however, that the district judge also relied upon Taylor's testimony. Although Fox's notebooks reflect just over 4 kilograms, her notebooks did not include Taylor's independent sales to Thompson which included 5 to 7 sales of kilogram amounts and numerous multiple ounce sales over a five year period. The district court credited the testimony of both Fox and Taylor and held Thompson responsible for an amount of cocaine between 5 and 15 kilograms. This finding was not clearly erroneous.
 
 
 30
 D. The Enhancement for Obstruction of Justice Was Proper
 
 
 31
 Thompson next challenges the district court's two-level enhancement of his sentence for obstruction of justice. Thompson argues the district court failed to make sufficient findings to support the enhancement as required in United States v. Dunnigan, --- U.S. ----, 113 S.Ct. 1111 (1993). We disagree and find the enhancement was proper because the district court made specific findings that Thompson committed perjury.
 
 
 32
 U.S.S.G. Sec. 3C1.1 explicitly requires district courts to enhance a defendant's sentence where a "defendant willfully impeded or obstructed or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." Guideline commentary clearly includes committing perjury within behavior which impedes or obstructs justice. U.S.S.G. Sec. 3C1.1., comment. n. 1(c) (Nov. 1989).
 
 
 33
 The decision to enhance pursuant to Sec. 3C1.1 is not discretionary. Once a district court determines a defendant testified falsely, the court must enhance for obstruction of justice. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.1991), cert. denied, 500 U.S. 945 (1994); United States v. Morgan, 986 F.2d 151 (6th Cir.1993) (remanding where district court declined to make findings of a defendant's commission of perjury because court concluded government should bring a perjury prosecution).
 
 
 34
 Recently, the Supreme Court discussed Sec. 3C1.1 and held that trial courts must make specific findings supporting all the elements of a perjury violation. Dunnigan, 113 S.Ct. at 1117. The Court stated that an enhancement is sufficiently supported where the district court "makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id. In determining the elements of perjury, the Court referenced 18 U.S.C. Sec. 1621, the federal perjury statute, which provides:
 
 
 35
 A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory.
 
 
 36
 18 U.S.C. Sec. 1621 (emphasis added). In Dunnigan, the district judge never said the words "he committed perjury;" he instead found the defendant willfully testified untruthfully about material matters.[4] The Supreme Court affirmed because this finding encompassed the factual predicates for perjury.
 
 
 37
 We review determinations that a defendant has obstructed justice by committing perjury for clear error. 18 U.S.C. Sec. 3742(e); Alvarez, 927 F.2d at 303. Here, after hearing arguments from both sides, the district court found:
 
 
 38
 there is no doubt in my mind that [Thompson] lied on the stand. As I sat and listened to his testimony, it was clear to me that he was not merely understating his role but that he was engaging in outright perjurious conduct on the stand.
 
 
 39
 As I indicated, I found Miss Carol's [Fox's] testimony credible, particularly as it was corroborated by the independent contemporaneous evidence of the notebooks. Now, that evidence, in and of itself, along with corroborating evidence, would contradict directly Mr. Thompson's testimony.
 
 
 40
 [Thompson's] testimony goes to the heart of the allegation of trafficking and not merely to sentencing quantities or quantities involved in sentencing. As much as I don't like to do it, I'm going to have to find that the enhancement ... is justified by the facts of this case.
 
 
 41
 I cannot with any level or degree of intellectual honesty, find that this defendant did not perjure himself as he testified.... I've been overruled on it by the Sixth Circuit, subsequently by the Supreme Court. I've got to follow the law.
 
 
 42
 JA p. 209-210 (emphasis added).
 
 
 43
 As required by Dunnigan, the district court made a determination which encompassed the elements of perjury. Here, based on the record, this factual determination was not clearly erroneous.
 
 III. Conclusion
 
 44
 For the reasons stated above, we AFFIRM the convictions and sentences imposed by the Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan.
 
 
 
 [1]
 Besides adding Thompson as a co-conspirator, the charges in the indictment remained unchanged
 
 
 [2]
 Both Mastrogiovanni and Bucci entered conditional guilty pleas thereby preserving the issue of whether their federal indictments violated the Double Jeopardy Clause of the Fifth Amendment for appeal. The government did not object to the conditional pleas
 
 
 [3]
 Taylor also explained that at the time of his arrest, the government seized three phone books containing the names of people who bought cocaine from him including Thompson's name (as Mike P-H, or Mike, Port Huron) and his phone number
 
 
 [4]
 In Dunnigan the district court stated:
 The court finds that the defendant was untruthful with respect to material matters in this case. The defendant denied her involvement when it is clear from the evidence in this case, as the jury found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment, and by virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.
 
 
 [113]
 S.Ct. at 1115