UNITED STATES of America, Plaintiff–Appellee,

v.

Eric SHERROD, Defendant–Appellant.

No. 93–2263.

United States Court of Appeals, Sixth Circuit.

Argued June 20, 1994.

Decided Sept. 8, 1994.

Jonathan Tukel, Office of U.S. Atty., Detroit, MI (argued and briefed), for plaintiff-appellee.

Andrew Patton, Andrew N. Wise (argued and briefed), Federal Defender Office, Detroit, MI, for defendant-appellant.

Before: JONES and RYAN, Circuit Judges; and BERTELSMAN, Chief District Judge.*

BERTELSMAN, Chief District Judge.

In his appeal from a drug trafficking conviction, defendant asserts that the entrapment instruction given was incorrect because it did not make clear that predisposition had to exist prior to contact by the government agent. He also contends that the trial court made insufficiently detailed findings at his sentencing. We find the instruction issue without merit and affirm the conviction, but reverse on the sentencing issue and remand for further findings by the district court.

## I. Factual Background

Joseph Neil met Eric Sherrod while working as a cab driver in Detroit. In June 1992, Drug Enforcement Administration (DEA) Special Agent Daniel Krause began to investigate Sherrod for drug trafficking, based upon information obtained from Neil acting as a confidential informant.

On June 19, 1992, at the direction of Agent Krause, Neil placed tape recorded telephone calls to defendant to arrange the purchase of cocaine. No deal was negotiated during this conversation.

On June 22, 1992, Neil placed four additional calls to defendant. Each was recorded. As a result, the informant arranged to meet defendant that day to purchase one ounce of crack cocaine. During one of these conversations, defendant told Neil "[u]sually I send somebody else to make a delivery for me." The informant was given $1,000.00 to make the purchase.

Agent Krause arranged for the surveillance of the meeting, and observed defendant enter and exit Neil's vehicle. Afterward, Neil turned over the drugs to Agent Krause, who weighed them. Agent Krause discovered that there were only 12.3 grams instead of an ounce (28.35 grams). Thereafter, several attempts to reach defendant were unsuccessful.

However, two days later on June 24, 1992, defendant contacted Neil. Agent Krause also participated undercover. He and Neil spoke to defendant about the shortage, and requested that he make up the difference.

On July 30, 1992, Neil placed a taped call to defendant. During this call, Neil arranged a purchase of two ounces of crack cocaine for $2,000.00. Agent Krause planned the purchase to be a "buy-bust," meaning that the defendant would be arrested after the purchase took place.

Agent Krause, acting undercover, was present at the purchase. Once the transaction between Neil and defendant was complete, Agent Krause gave an arrest signal, whereupon a surveillance team of police officers arrested defendant. Upon a search of defendant's person, the police recovered a .38 caliber pistol, which defendant admitted to having for protection during the drug deal.

On November 12, 1992, defendant was indicted on four counts charged: Counts One through Three for distribution of cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1); and Count Four for carrying a firearm in relation to the drug transaction in violation of 18 U.S.C. § 924(c)(1).

At trial, he testified on his own behalf. By agreement of counsel and without objection, the trial judge instructed the jury on entrapment using Sixth Circuit Pattern Instruction 6.03.

Defendant was found guilty on all counts. He was subsequently assessed a two-point enhancement for obstruction of justice and was sentenced to a total of 181 months imprisonment.

## II. Analysis

Because no objection was made to the instruction at trial, our review is limited to one for plain error. The standard of review for plain error is set forth in a long line of our cases, one of the most recent of which is *United States v. Thomas,* 11 F.3d 620 (6th Cir.1993). There, the court propounded an

---

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

extensive discussion of the plain error doctrine and reviewed many authorities concluding:

"Thus, our inquiry under [FED.R.CRIM.P. 52(b) ] is made up of four distinct analyses. First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings."

*Thomas,* 11 F.3d at 629. At another point in the opinion, the court observed that "plain" is synonymous with "clear" or "obvious." *Id.*

The Sixth Circuit's Pattern Criminal Jury Instructions were drafted by a committee "to promote uniformity, to assist busy judges and practitioners, to reduce litigation and to state the law in an understandable way." [1] Although approved by the Sixth Circuit Judicial Council for publication, the approving resolution clearly specified that the instructions were not binding: "provided, however, that this Resolution shall not be construed as an adjudicative approval of the content of such instructions which must await a case-by-case review by the Court of Appeals." *Pattern Instructions,* p. iii. Furthermore, the Introduction to the *Pattern Instructions* admonishes that "[c]ounsel and the court must work to tailor the instructions to fit the facts of each case." *Pattern Instructions,* p. vii.

The entrapment Pattern Instruction (6.03) reads as follows:

"(1) One of the questions in this case is whether the defendant was entrapped.

"(2) Entrapment has two related elements. One is that *the defendant was not already willing to commit the crime.* The other is that the government, or someone acting for the government, induced or persuaded the defendant to commit it.

"(3) If the defendant *was not already willing to commit the crime,* and the government persuaded him to commit it, that would be entrapment. But if the defendant *was already willing to commit the crime,* it would not be entrapment, even if the government provided him with a favorable opportunity to commit the crime, or made the crime easier, or participated in the crime in some way.

"(4) It is sometimes necessary during an investigation for a government agent to pretend to be a criminal, and to offer to take part in a crime. This may be done directly, or the agent may have to work through an informer or a decoy. This is permissible, and without more is not entrapment. The crucial question in entrapment cases is whether the government persuaded a defendant *who was not already willing to commit a crime* to go ahead and commit it.

"(5) The government has the burden of proving beyond a reasonable doubt *that the defendant was already willing to commit the crime.* Let me suggest some things that you may consider in deciding whether the government has proved this:

"(A) Ask yourself what the evidence shows about the defendant's character and reputation.

"(B) Ask yourself if the idea for committing the crime originated with or came from the government.

"(C) Ask yourself if the defendant took part in the crime for profit.

"(D) Ask yourself if the defendant took part in any similar criminal activity with anyone else before or afterwards.

"(E) Ask yourself if the defendant showed any reluctance to commit the crime

---

1. Pattern Criminal Jury Instructions, U.S. Sixth Circuit District Judges' Association, 1991 Edition, p. vii (West 1991) (hereinafter *"Pattern Instructions"* ). The Committee was organized under the auspices of the Sixth Circuit District Judges' Association, chaired by District Judge Julian Abele Cook, Jr. of Detroit. The writer of this opinion served as a member of the Committee. *Id.,* p. v. It met over a period of many months and made extensive efforts to formulate its product in plain English, rather than legalese, so that jurors might perform their task more intelligently.

**726**

and, if he did, whether he was overcome by government persuasion.

"(F) And ask yourself what kind of persuasion and how much persuasion the government used.

"(6) Consider all the evidence, *and decide if the government has proved that the defendant was already willing to commit the crime.* Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty." (Emphasis added).

Defendant argues that the instruction fails to embody the precept that:

"[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue ... the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act *prior to first being approached by Government agents.*"

*Jacobson v. United States,* —— U.S. ——, ——, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992) (emphasis added).

■ Pattern Instruction 6.03 is potentially ambiguous vis-a-vis the language in *Jacobson.*[2] However, in light of the language of the instruction emphasized above, we believe that the most probable interpretation is consistent with *Jacobson;* namely, that defendant had to be "already willing" prior to contact by the government operatives. Accordingly, no error was committed by giving the instructions.

■ Even if we were to find it was erroneous to give Instruction 6.03 because it lacks the "prior to" language of *Jacobson,* any

discrepancy between Instruction 6.03 and *Jacobson* is not sufficient to meet the stringent test for plain error.

The other three prerequisites for successful invocation of the plain error doctrine are lacking. First, it is not clear or obvious that the term "already" does not mean before contact by the government agent. We have noted that the more probable interpretation is that it does. Furthermore, that was the meaning given to the instruction by the parties and the court, as evidenced by the way the case was litigated.[3]

Because the case was so practiced, we do not believe that the ambiguity affected the substantial rights of the defendant. Nor do we believe any error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Thomas,* 11 F.3d at 629. Thus, we would decline to exercise our discretionary power under the fourth element of the plain error doctrine, even if the other elements existed. We do recommend, however, that Pattern Instruction 6.03 be amended to clarify the ambiguity noted herein.

■ Finally, the district court overruled defendant's objection to the enhancement of his sentence for obstruction of justice without a clear explanation of his reasons as required, for example, under *United States v. Clark,* 982 F.2d 965 (6th Cir.1993) and *United States v. Burnette,* 981 F.2d 874 (6th Cir.1992). Accordingly, we remand the matter for further findings on this point by the district judge.

---

2. Although *Jacobson* was decided after the Pattern Instructions were published, it has long been the law that the predisposition had to exist prior to contact by the government agents. *E.g., U.S. v. Johnson,* 855 F.2d 299, 303 (6th Cir. 1988); *U.S. v. Lasuita,* 752 F.2d 249 (6th Cir. 1985).

3. For example, defense counsel argued in his closing statement:

"The issue is, I have a young man here who had no record, who had no history of selling drugs. He used drugs, he is a drug addict, but he had never sold them. He had bought them, had been a drug customer. He knows about the drug environment. He had not sold any-

body any drugs or been convicted of it or anything like that.

"Neil Joseph comes along, sees that he is vulnerable, decides to take advantage, calls him constantly, pressures him using his poverty, uses his lack of funds, uses his lack of self-esteem, uses all of these things, all the experience that he brings to bear on Eric Sherrod. 'This is how you can make some money. Here is how you do it. This is what we are going to do.' And he just hits him and hits him with it, until finally he says, 'Okay, let's do it. Let's do this deal.'

"You can't put a lion in the same pen as a sheep. Neil Joseph had tons of experience. Eric Sherrod had none."

*Trial Transcript, p. 201.*