68 F.3d 475
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Stephen LUCAS, Defendant-Appellant, Cross-Appellee.
 Nos. 94-5625, 94-5674.
 United States Court of Appeals, Sixth Circuit.
 Oct. 10, 1995.
 
 Before: JONES and BOGGS, Circuit Judges; and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Stephen Lucas appeals his conviction for aiding and abetting bank fraud (No. 94-5625). The government cross-appeals the district court's refusal to increase Lucas's offense level by two levels for more than minimal planning (No. 94-5674). For the reasons set out more fully below, we affirm the judgment of conviction and vacate the sentence and remand the matter to the district court for resentencing.
 
 
 2
 * In 1982, Stephen Lucas began taking business and personal loans from the Covington Trust Bank in Covington, Kentucky. His loan officer was assistant vice president Craig Bailey. Lucas continued doing business with Bailey until 1989.
 
 
 3
 From 1982 to 1986, Covington Trust Bank had a liberal loan policy, and Bailey had broad discretion in approving loans for Lucas. However, all the loans Bailey approved met the bank's loose standards.
 
 
 4
 In 1986, policies at the bank changed. Huntington Bank, a large bank listed on the New York Stock Exchange, purchased Covington Trust. Huntington Bank had stricter loan requirements and had committees to oversee the stringent requirements on loaning money. After the purchase, Huntington bank permitted fewer unsecured loans.
 
 
 5
 Until 1987, Lucas's loans were in good standing. However, Lucas became delinquent on them sometime in 1987. Bailey began to authorize overdrafts on Lucas's checking accounts and agreed to renew or roll over both interest and principal on Lucas's installment loans.
 
 
 6
 In 1987, the new bank reviewed Bailey's loan record, and found that he had extended terms on installment loans beyond the recommended amount and allowed overdrafts to customers of questionable credit. As a result, Huntington Bank stripped Bailey of his power to lend money. Bailey then became concerned that he would lose his job if he did not shape up his loan portfolio.
 
 
 7
 To improve his loan record, Bailey went to Lucas and told Lucas to start paying on his loans. Lucas responded that it was "his [Bailey's] problem." Furthermore, Lucas threatened to file for bankruptcy, which Bailey feared would cause him to lose his job.
 
 
 8
 More significantly, Bailey testified that Lucas occasionally threatened his and his family's physical well-being. He testified that Lucas made various threatening remarks, including alluding to his friendship with a black belt in karate. Bailey testified that he knew that Lucas had been a police officer and felt that Lucas would know how to carry out his threats.
 
 
 9
 To cover for Lucas's overdrafts in the checking account and failure to make payments on loans, Bailey began writing unfunded cashier's checks, which he deposited in Lucas' account. To conceal his scheme, Bailey wrote new cashier's checks to cover old ones. Bailey also came up with a scheme to make loan payments for Lucas. First, Bailey sent payment coupons to Lucas, which Lucas would return to the bank, but without payment, around the time each loan payment was due. Then Bailey would write a series of fraudulent cashier's checks that were deposited in Lucas's accounts. The money would then be deducted from the accounts by an internal debit memo to pay the loans, or it would be deducted from the account using the loan installment payment coupons. Bailey testified that his fear of Lucas motivated him to come up with these schemes.
 
 
 10
 The government notes that from September 22, 1988 through November 6, 1989 Lucas deposited no money in his accounts, yet he continued to write checks. This created more overdrafts, forcing Bailey to "cover" them with yet more cashier's checks. Eventually, the scheme collapsed when a customer complained to the bank management about inconsistencies in his bank balance. The management discovered that Bailey had taken money for a Certificate of Deposit, but never made out the certificate to the paying customer. Instead, he used the money to prop up Lucas.
 
 
 11
 A federal grand jury indicted Lucas on November 10, 1993. The indictment charged him with five counts of aiding and abetting bank fraud, in violation of 18 U.S.C. Sec. 1344, and five counts of aiding and abetting money laundering, in violation of 18 U.S.C. Sec. 1956(a)(1)(A)(i) and (B)(i). Specifically, the indictment concerned five different checks totalling about $26,000.[1] Upon Lucas's motion, the court dismissed two of the money laundering charges, and ordered a trial on the five bank fraud and three laundering charges.
 
 
 12
 The trial began February 28, 1994. At the conclusion of the government's case, the court granted Lucas's motion for acquittal as to the three remaining money laundering counts, but denied the motion as to the five bank fraud counts.
 
 
 13
 The jury found Lucas not guilty on counts one and two, and guilty on counts three, four, and five. The district court sentenced Lucas to twelve months and one day, effectively the bottom of his guideline range of twelve to eighteen months.[2]
 
 
 14
 On May 10, 1994, Lucas filed his appeal. The government filed a cross-appeal from the court's decision to deny a two-level increase in Lucas's offense level for "more than minimal planning."
 
 II
 
 15
 Lucas raises three arguments regarding the jury verdict, all of which can be dealt with together. Two are claims regarding the sufficiency of the evidence, and the third is a claim that the jury returned a compromise verdict.
 
 
 16
 The first two issues, regarding the jury verdict, are claims that the evidence was insufficient and that the judge should have granted the motion for a judgment of acquittal. Neither issue warrants reversal.
 
 
 17
 In challenging a guilty verdict through a claim of insufficiency of evidence, the defendant bears a heavy burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The standard of review to be applied by this court is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987).
 
 
 18
 In considering the evidence, the court must view both circumstantial and direct evidence in a light most favorable to the government. United States v. Hofstatter, 8 F.3d 316 (6th Cir.1993), cert. denied, 114 S.Ct. 1101 (1994). Furthermore, the application of this standard requires the court to consider all reasonable inferences from the evidence in favor of the prosecution. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982). Furthermore, where witness testimony is part of the prosecution's case, credibility is an issue within the province of the jury. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988); United States v. Pelfrey, 822 F.2d 628, 632 (6th Cir.1987).
 
 
 19
 To find Lucas guilty of three counts of aiding and abetting Bailey in bank fraud the government had to prove that Bailey had committed the underlying offense of bank fraud. Both Bailey and Lucas concede that Bailey committed bank fraud.[3] The government also must prove that Lucas aided and abetted Bailey. To do so, it must prove that: (1) Lucas was associated with the criminal venture; (2) that he participated in it as something he wished to bring about; and, (3) he sought by his actions to make it succeed. Nye & Nissen v. United States, 336 U.S. 613, 619 (1949); United States v. Hughes, 891 F.2d 597, 599 (6th Cir.1989).
 
 
 20
 It appears that Lucas complains that he did not have the requisite intent with respect to the method of bank fraud used by Bailey. This is not the standard. The government correctly notes that the Fifth Circuit has held that "it is not necessary ... that one charged as an aider and abettor commit the overt acts that serve to accomplish the offense or that he have knowledge of the particular means his principals ... employ to carry out the criminal activity." United States v. Austin, 585 F.2d 1271, 1277 (5th Cir.1978).
 
 
 21
 Similarly, with respect to a bank fraud case, this Circuit stated that:
 
 
 22
 Because it is often difficult to prove directly the awareness of the aider and abettor of the principal's intent to injure or defraud a bank, courts have allowed the inference of such awareness to be drawn from other circumstances, and have allowed this inference to serve as a basis for finding the necessary intent to facilitate the commission of the substantive offense.
 
 
 23
 United States v. Franklin, 608 F.2d 241, 245 (6th Cir.1979). In Franklin, the court determined that such circumstances did not exist and reversed the conviction. However, the existence of these "other circumstances" can be found in this case.
 
 
 24
 This court does not reexamine the credibility of witnesses. United States v. Spears, 49 F.3d 1136, 1140 (1995) (citing United States v. Bailey, 444 U.S. 394, 414-15 (1980)). However, viewing the evidence in the light most favorable to the prosecution, and drawing all inferences in its favor, we hold that a jury could rationally conclude that Lucas knew Bailey was doing something illegal to cover Lucas's debt and that Lucas encouraged Bailey to do so. Specifically, a rational juror could conclude that: (1) Lucas made veiled threats to Bailey about what would happen if Bailey did not fund the account; (2) Lucas sent his payment stubs to Bailey to facilitate the payment of his loans; (3) during the period described in the indictment, Lucas never made a single deposit into the accounts, yet continued to write checks; (4) Lucas received notices from the bank that his account was overdrawn; (5) while Bailey did eventually embezzle money for his own use, initially all of the money went into Lucas's checking account; and, (6) in total, most of the money taken went to Lucas, not Bailey. These and other facts are sufficient to allow a jury to conclude that Lucas was criminally culpable. As the district court noted, deliberate ignorance is not a defense. United States v. Lee, 991 F.2d 343 (6th Cir.1993).
 
 
 25
 It appears that Lucas also feels that the acquittal by the jury on the first two counts, yet conviction on the last three, amounts to a compromise verdict. Lucas offers various reasons for the alleged compromise verdict, ranging from a lack of evidence, to a deadlocked jury, to confusion after the dismissal of the money laundering counts by the judge. We need not entertain this host of allegations because the result, acquittal on two counts and conviction on three, does not itself require any examination.
 
 
 26
 There is no reason to conclude that the verdict is inconsistent. A rational jury could conclude that it had a reasonable doubt whether Lucas had the intent (or even knowledge) regarding the bank fraud when the money appeared in his account the first two times, but that it had no doubt that he knew what was happening when the money appeared in his account the third, fourth, and fifth times.
 
 
 27
 Furthermore, even if the verdicts are inconsistent, "the Supreme Court has repeatedly held that a jury may announce logically inconsistent verdicts in a criminal case." United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990). See, e.g., United States v. Powell, 469 U.S. 57 (1984) (" 'consistency in the verdict is not necessary,' " quoting Dunn v. United States, 284 U.S. 390 (1932) (Holmes, J.)). Therefore, there is no requirement that verdicts be logically consistent.
 
 
 28
 Because there is sufficient evidence to support the conviction and because there is no prohibition of inconsistent verdicts this issue does not warrant reversal.
 
 III
 
 29
 Lucas also attacks the form of the indictment. He claims that, instead of five separate counts, the district court should have consolidated the five checks into one count of bank fraud. Lucas argues that failure to place the five checks in one count amounted to a violation of the double jeopardy clause.
 
 
 30
 Because multiplicity of charges raises double jeopardy concerns, we review this issue de novo. See Costo v. United States, 904 F.2d 344, 346 (6th Cir.1990). The key issue in a multiplicity claim is whether the court characterizes a course of conduct as a group of acts conducted solely in furtherance of the fraud, or as acts that are each a separate execution of the fraud.
 
 
 31
 Those circuits that have addressed the issue of charging multiplicity in bank fraud cases have held that where the scheme is a check-kiting or similar scheme, each check a perpetrator writes and deposits is a separate execution of the scheme and may be charged in a separate count in an indictment. See United States v. Poliak, 823 F.2d 371 (9th Cir.1987), cert. denied, 485 U.S. 1029 (1988) ("Here, Poliak wrote ten separate checks, each a different and separate execution of the scheme to defraud the banks.... We therefore find that the indictment was adequate and properly charged Poliak with ten separate counts of bank fraud."). See also United States v. Schwartz, 899 F.2d 243, 248 (3d Cir.), cert. denied, 498 U.S. 901 (1990); United States v. Barnhart, 979 F.2d 647, 651 (8th Cir.1992); United States v. Lilly, 983 F.2d 300, 304 (1st Cir.1992) (overturning conviction, but noting that, in refusing to apply check kiting cases because of different facts, "each check signifies a separate issuance of money or credit on the part of the victimized bank.").
 
 
 32
 Bailey drew each check in an amount that not only hid the previous check but also added additional funds to the amount taken. Therefore, the decision to charge Lucas in five separate counts was not a violation of the double jeopardy clause.
 
 IV
 
 33
 Lucas also claims that the court improperly admitted evidence of "prior bad acts" under Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). The evidence Lucas complains of was Bailey's testimony about threats made by Lucas. However, the indictment charged Lucas with having "directed Bailey, by use of intimidation, to use whatever means available to Craig Bailey in his capacity as a bank officer to cover, conceal and hide the overdrafts Stephen L. Lucas had knowingly created in his checking account" (emphasis added).
 
 
 34
 Lucas never objected to this material at trial. The court may review an error when the defendant made no objection only if it constitutes a "plain error" that affects the substantial rights of the defendant. Fed.R.Crim.P. 52(b); United States v. Sherrod, 33 F.3d 723, 724 (6th Cir.1994), cert. denied, 115 S.Ct. 1317 (1995).
 
 
 35
 Because Lucas never objected, the court reviews solely for plain error whether the admission of testimony about the threats was a violation of Rule 404(b). This court has summarized the four-part analysis used in determining plain error: (1) whether an error occurred in the district court; (2) whether the error was plain; (3) whether the plain error affects substantial rights; and (4) whether to exercise the court's discretionary power under Rule 52(b), i.e., decide whether the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Segines, 17 F.3d 847, 852 (6th Cir.1994) (citing United States v. Thomas, 11 F.3d 620, 630 (6th Cir.1993), cert. denied, 114 S.Ct. 1570-71 (1994)).
 
 
 36
 Because there was no error in admitting the material, Lucas cannot meet the first part of the test. The Tenth Circuit aptly stated why this type of material is not subject to Rule 404(b). "Rule 404(b) applies to evidence of acts extrinsic to the charged crime. An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was inextricably intertwined with the charged crime...." United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir.1993). See also United States v. Torres, 685 F.2d 921, 924 (5th Cir.1982) (per curiam) ("An act is not extrinsic, and Rule 404(b) is not implicated, where evidence of that act and the evidence of the crime are inextricably intertwined.") Clearly the threats made by Lucas to Bailey are not extrinsic. The indictment alleged that the threats were the chief impetus behind Bailey's scheme.[4]
 
 V
 
 37
 The United States cross-appeals (No. 94-5674) the sentence imposed on Lucas, claiming that the district court found that the fraudulent scheme involved more than minimal planning, but refused to increase Lucas's offense level by two, pursuant to USSG Sec. 2F1.1(b)(2)(A). The district court clearly stated: "I think there was more than minimal planning, but Bailey did it" and again stated that "Yes there was more than minimal planning, but the evidence was that Bailey did it." J.A. 303-05. The district court then refused to apply the two-level increase for more than minimal planning. This was error.
 
 
 38
 Initially, the government cites the wrong standard of review. It states that this court reviews the judge's finding for clear error, which it claims to demonstrate. However, the finding of fact (more than minimal planning) is favorable to their side. What the United States really complains about is the application of the guidelines to those facts, a matter reviewed de novo. See United States v. Morrison, 983 F.2d 730, 732 (6th Cir.1993).
 
 
 39
 The issue is whether a court addresses the enhancement for more than minimal planning by looking at the role of one person or the entire scheme. This Circuit has addressed this specific issue directly, coincidentally in a bank fraud case. In United States v. Ivery, 999 F.2d 1043 (6th Cir.1993), we held that the determination of more than minimal planning is based on the nature of the scheme, not the conduct of a particular person in that scheme. Ivery, 999 F.2d at 1046. See also United States v. Wilson, 955 F.2d 547 (8th Cir.1992). Having made such a clear and unequivocal finding of fact, the district court was not free to disregard it. Cf. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.) ("having made the finding that Alvarez testified untruthfully as to a material fact while under oath, the district court had no discretion under the Sentencing Guidelines in applying Sec. 3C1.1"), cert. denied, 500 U.S. 945 (1991).
 
 
 40
 Notably, Lucas never contends that the finding was clearly erroneous, and, based on the complexity of the scheme, it is difficult to argue that it was. Therefore, because the finding is unequivocal and because Ivery is controlling, we must vacate the sentence and remand the matter to the district court for sentencing with a two-level enhancement for more than minimal planning.
 
 VI
 
 41
 The judgment of conviction is AFFIRMED, the sentence is VACATED and the matter is REMANDED to the district court for resentencing in a manner consistent with this opinion.
 
 
 42
 CHURCHILL, District Judge, dissenting.
 
 
 43
 I respectfully dissent.
 
 
 44
 On November 10, 1993 Stephen L. Lucas was charged by indictment with five counts of bank fraud in violation of 18 U.S.C. Secs. 1344 and 2 and five counts of money laundering in violation of 18 U.S.C. Secs. 1956(a)(1)(A)(i) and (B)(i).
 
 
 45
 In each of the bank fraud counts the indictment charged that Lucas and Craig Bailey, who is not a defendant in this case, aided and abetted each other in the commission of the offense.
 
 
 46
 Prior to trial the court dismissed two of the money laundering counts.
 
 
 47
 Jury trial commenced on February 28, 1994.
 
 
 48
 At the close of the government's case in chief, Lucas's attorney moved for a judgment of acquittal on all counts. The court granted the motion on the remaining money laundering counts.
 
 
 49
 The court denied the motion with respect to the bank fraud counts stating, "On the counts of aiding and abetting embezzlement, I overrule it."[1]
 
 
 50
 On March 2, 1994 the jury returned a verdict of not guilty with respect to two of the bank fraud counts, being Counts 1 and 2, and returned a verdict of guilty with respect to the other three bank fraud counts, being Counts 3, 4 and 5.
 
 
 51
 On March 9, 1994 the defendant filed a motion for judgment of acquittal or, in the alternative, for a new trial. The thrust of the motion for judgment of acquittal was that the evidence did not show that Lucas had knowledge of Bailey's activities. The court denied both motions. The stated reasons for denial of the motion for judgment of acquittal was that "Lucas either knew the funds were the result of Craig Bailey's embezzlement or kept himself deliberately ignorant of that fact."
 
 
 52
 It may be inferred that in denying the motions for judgment of acquittal the court used the word "embezzlement" to refer to the transfers to Lucas's account and to make payments on his loans, and not to Bailey's personal acts of embezzlement which led to Bailey's conviction several years earlier.
 
 
 53
 On May 5, 1994 Lucas received a sentence of one year and one day in custody, three years' supervised release and $19,200 restitution. He was released on bail pending appeal.
 
 
 54
 On timely appeal he has raised several issues.
 
 
 55
 The appellant challenges the sufficiency of the evidence. He claims that all of the bank fraud charges should have been included in a single count. He claims that inadmissible evidence was received during the trial. He claims that certain statements and remarks to the jury by the United States Attorney deprived him of a fair trial. He claims that the verdict was a compromise verdict.
 
 
 56
 The government filed a cross-appeal involving Lucas's sentence.
 
 
 57
 Throughout the trial the government, defense counsel and the court all seemed to have assumed that on the undisputed evidence Bailey, although not named as a defendant in the indictment, was in fact guilty of committing bank fraud as that crime is charged in the indictment. Furthermore, by implication at least, it appears that the government, defense counsel and the court did not take Bailey's personal embezzlement into consideration in arriving at this conclusion.
 
 
 58
 The same assumptions are perpetuated in the briefs on appeal.
 
 
 59
 The main thrust of the briefs on appeal involve the issue of whether there was sufficient evidence to support a finding that Lucas aided and abetted Bailey in committing the offense.[2]
 
 
 60
 The jurors were instructed that before they could find that Lucas aided and abetted Bailey in the commission of the offense charged they must first find that Bailey committed the offense himself.
 
 
 61
 My examination of the record has caused me to examine the issue as to whether, taking the facts from the government's most favorable point of view, Bailey committed the offense charged in the indictment.
 
 
 62
 Title 18, U.S.C. Sec. 1344, in pertinent part, reads as follows:
 
 
 63
 Whoever knowingly executes ... a scheme or artifice--
 
 
 64
 (1) to defraud a financial institution; or
 
 
 65
 (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
 
 
 66
 shall be [guilty of an offense against the United States].
 
 
 67
 (emphasis added).
 
 
 68
 The indictment in this case tracks the language of those parts of the statute which are underlined above.[3]
 
 
 69
 Appropriately, the court instructed the jury that it was a necessary element of the bank fraud charges in the indictment "that Craig Bailey knowingly executed a scheme to obtain funds under the custody and control of the Huntington Bank ... by means of false or fraudulent pretenses, representations or promises." (emphasis added).
 
 
 70
 It is apparent that trial counsel in this case did not comprehend the dual nature of the crime created by the bank fraud statute. In her final argument to the jury, counsel for the government argued that this element of the offense had been established because Bailey admitted that he had committed a scheme to defraud the bank. Defense counsel raised no objection and did not attempt to rebut this aspect of the argument.
 
 
 71
 To conform with the indictment, and to comply with the court's instructions, it was necessary for the members of the jury to find beyond a reasonable doubt that it was a part of the scheme and artifice that Bailey obtain the bank's funds. It was not relevant that the scheme may have been a scheme to defraud the bank.
 
 
 72
 Congress modeled the bank fraud statute on the mail fraud statute, 18 U.S.C. Sec. 1341, and on the wire fraud statute, 18 U.S.C. Sec. 1343. United States v. Bonnett, 877 F.2d 1450, 1454 (10th Cir.1989). I find no cases in which the meaning of the word "obtain" in the bank fraud statute, or in the mail or wire fraud statutes, has been discussed.
 
 
 73
 Black's Law Dictionary (6th ed. 1990) defines "obtain" as "to get hold of by effort; to get possession of; to procure; to acquire, in any way."
 
 
 74
 The definition in The American Heritage Dictionary of the English Language (3d ed. 1991), is as follows: "To succeed in gaining possession of as the result of planning or endeavor; acquire."
 
 
 75
 In United States v. Tormos-Vega, 959 F.2d 1103 (1st Cir.), cert. denied sub nom. Boscio v. United States, 113 S.Ct. 191 (1992), the Court of Appeals for the First Circuit used Webster's Third New International Dictionary (1971) definition for "obtain" in determining the scope of the offense of extortion[4] in the Hobbs Act, 18 U.S.C. Sec. 1951. "The term 'obtain' means 'to gain or attain possession or disposal of [usually] by some planned action or method.' " Id. at 1112.
 
 
 76
 Bailey obtained bank funds when he embezzled approximately $44,000. In this context we use the word "embezzlement" in its "settled technical meaning."[5] Embezzlement means "to knowingly and deliberately take, or convert to one's own use, the property of another, which property came into the possession of the wrongdoer or 'embezzler' lawfully, by virtue of some office, or position of trust which the wrongdoer or 'embezzler' held." Devitt & Blackmar: Federal Jury Practice and Instructions, Sec. 30.04 (4th ed. 1990). See also United States v. Mack, 525 F.Supp. 382 (N.D.Tex.1981). There is no evidence to support a finding that Lucas had any knowledge that Bailey converted bank funds to his own use nor that Lucas did anything to aid and abet the embezzlement.
 
 
 77
 Bailey did not commit the offense as charged unless he "obtained"; i.e., took possession of, the funds which were used to pay Lucas's obligations to the bank.
 
 
 78
 If a gas station attendant fraudulently pumps his employer's gasoline into a friend's automobile, the gas station attendant does not, even temporarily or constructively, obtain the gasoline. By transferring the bank's money directly to Lucas's checking accounts and loans, Bailey did not even temporarily or constructively obtain it.
 
 
 79
 A construction of the statute, which gives the word "obtain" its plain and ordinary meaning, creates no loophole for bank fraud. Bailey's scheme to transfer funds to Lucas's bank account was a scheme to defraud the bank within the meaning of subsection (1) of Sec. 1344. Concealment of the transaction satisfied the fraudulent misrepresentation element of the offense. U.S. v. Goldblatt, 813 F.2d 619, 623-24 (3rd Cir.1987). Likewise, when Bailey transferred funds to Lucas's checking account, Bailey was willfully misapplying funds of the bank within the meaning of 18 U.S.C. Sec. 656. Logsdon v. United States, 253 F.2d 12 (6th Cir.1958). Perhaps it could be proven beyond a reasonable doubt that Lucas aided and abetted Bailey in the commission of one of these offenses. However, Lucas was not charged with either of these; he was specifically charged with aiding and abetting Bailey's scheme to obtain bank funds.
 
 
 80
 Because Bailey did not commit the offense charged in the indictment, it follows as a matter of law that Lucas did not aid and abet him in committing the offense.
 
 
 81
 Rule 52(b), Fed.R.Crim.P., provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
 
 
 82
 "Ordinarily Rule 52(b) is invoked by counsel who, in preparing an appeal, discover what they consider to be error to which they took no objection below. The rule is not so limited, however, and the appellate court may take notice of an error on its own motion though it is never put forward by counsel." 3 Charles A. Wright, Federal Practice and Procedure, Criminal 2d Sec. 856.
 
 
 83
 United States v. Finch, 998 F.2d 349, 354-55 (6th Cir.1993).
 
 
 84
 Although we should be reluctant to decide a case on an issue that was not raised or briefed at any level, we should not allow a person to be convicted of a crime which as a matter of law he did not commit.
 
 
 85
 For the foregoing reason I would reverse the judgment of conviction.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 It appears that Bailey actually issued dozens of checks to cover overdrafts in the Lucas accounts
 
 
 [2]
 The court sentenced Lucas to twelve months and one day because, by having a sentence longer than twelve months, Lucas would have the potential for "good time" credit
 
 
 [3]
 Lucas concedes that Bailey committed the crime in question. See Appellant's Brief at 16. Furthermore, Bailey admitted to engaging in bank fraud in his testimony at Lucas's trial. J.A. at 214-43. It is clear that Bailey "obtained" the funds when he wrote unfunded cashier's checks. Where he then deposited those checks, whether in his account, in Lucas's account, or with a charity, is irrelevant. Finally, it would be a wooden formalism to conclude that Bailey did not "obtain" money because he directed it into another account. The word "obtain" means "to gain or attain possession or disposal of." United States v. Tormos-Vega, 959 F.2d 1103, 1112 (1st. Cir.) (emphasis added), cert. denied, 113 S.Ct. 191 (1992)
 
 
 [4]
 We will not dignify the allegations of prosecutorial misconduct with a lengthy discussion. We only note that the allegations, particularly the one claiming that the prosecutor suborned perjury, have no basis in fact and as such are utterly meritless
 
 
 [1]
 During jury selection the court told the jury that the indictment charged Lucas and Bailey with embezzling funds and that Lucas was charged with engaging in a scheme to embezzle from a bank at which he was employed. This is the first of several instances in which the crime of embezzlement was confused with the offense charged in the indictment
 
 
 [2]
 After Lucas was informed that Bailey had lost authority over his loans, Lucas (1) made no more payments on loans (2) received bank statements showing activity in his checking account (3) continued to draw checks on his account and (4) provided loan coupons to Bailey as installments became due
 
 
 [3]
 Although the indictment charged that Bailey and Lucas aided and abetted each other, this nuance was disregarded by the government and the court throughout the trial
 
 
 [4]
 Subsection (b)(2) defines extortion as meaning the "obtaining of property from another...."
 
 
 [5]
 See United States v. Northway, 120 U.S. 327, 334 (1887)