105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Mukhtar A. MALIK, Defendant-Appellant.
 No. 95-2213.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1997.
 
 Before: CONTIE, SUHRHEINRICH, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Defendant-Appellant Mukhtar A. Malik appeals his conviction and sentence for conspiracy and for prescribing controlled substances outside the usual course of medical practice and without a legitimate medical purpose. He contends that the admission of improper evidence, prosecutorial misconduct, and failure to give certain jury instructions require a new trial. He also contends, in the alternative, that the base offense level calculation for sentencing was erroneous and requires resentencing. For the reasons discussed below, we affirm the convictions and the sentence.
 
 
 2
 * Malik, a radiologist in Bay City, Michigan, was convicted under 21 U.S.C. §§ 846, 841(a)(1) of one count of conspiracy to distribute controlled substances and forty-one counts of distribution of controlled substances without a legitimate medical purpose. The convictions were based on prescriptions written by Malik for small amounts of controlled substances containing codeine, a schedule III narcotic.[1]
 
 
 3
 At sentencing, more than ninety percent of the base offense level used by the court was based on the prescriptions written for one patient, Diana Lyles, and the seven Tussionex prescriptions written for undercover police officers. J.A. at A452, A457, A459. The judge stated that he included the Lyles chart in the drug amounts because it was representative of Malik's pattern. See J.A. at A451 ("the things that were going on with Lyles over the course of years were of a kind that was demonstrated by the other evidence at trial"). The judge found that the government had proved by a preponderance of the evidence that the drug amounts in Lyles's chart should be included, and cited a statement Lyles had made to the FBI and the fact that the government's expert witness had taken her chart into account in his report and trial testimony. See J.A. at A448, A451-52, A454-55. The judge also indicated that he believed that the total amount may have "undercount[ed]" the amounts for which Malik could be held responsible. See J.A. at A452.
 
 II
 
 4
 Malik challenges his conviction on numerous grounds, including evidentiary objections, prosecutorial misconduct, failure to give certain jury instructions, ineffective assistance of counsel, and the constitutionality of the statute under which he was convicted.
 
 
 5
 * Rulings on admission of evidence after objections are reviewed for abuse of discretion. United States v. Bonds, 12 F.3d 540, 554 (6th Cir.1993).[2] If no objection was made, this court reviews admission of evidence for plain error only. United States v. Morrow, 977 F.2d 222, 228 (6th Cir.1992) (en banc), cert. denied, 508 U.S. 975 (1993). "[I]mproper comments made by the prosecutor without objection from [the defendant]" also are reviewed for plain error. United States v. Carroll, 26 F.3d 1380, 1383 (6th Cir.1994) (citing United States v. Young, 470 U.S. 1, 16 (1985), and Morrow, 977 F.2d at 229). Similarly, failure to give certain instructions to the jury in the absence of a request by the defense is reviewed under the plain error standard. United States v. Taylor, --- F.3d ----, 1996 WL 705886, at * 3 (6th Cir. Dec. 10, 1996); United States v. Rugiero, 20 F.3d 1387, 1391 (6th Cir.), cert. denied, 115 S.Ct. 208 (1994).
 
 
 6
 Most of the issues Malik presses on appeal were not raised by objections at trial, so they are reviewed for plain error. We have considered Malik's contentions 1) that the pharmacists' testimony was without foundation, irrelevant, inflammatory, and invasive of the province of the jury as to the ultimate issue; 2) that the prosecutor improperly vouched for the credibility of the police officers; 3) that the prosecutor improperly tried to tie Malik to the social problem of street drugs and to the war on drugs; 4) that a police officer gave improper opinion testimony; 5) that the prosecutor and prosecution witnesses tried to inflame the prejudices of the jury with certain testimony; 6) and that the court erred by not giving the jury cautionary instructions regarding the circumstances of his statement to the police and regarding testimony of accomplices and/or informers. None of these contentions has merit.
 
 
 7
 Malik also challenges as irrelevant and inflammatory the testimony of a pharmacist regarding the uses of certain controlled substances for "street abuse" and the testimony of a police officer regarding a "sting house" in Flint. At trial, defense counsel objected to both on relevancy grounds. As to the former, the court admitted the testimony as relevant to demonstrating the potential use of the controlled substances in question for purposes other than legitimate medical uses. As to the latter, the court allowed it with the understanding that the evidence that some of Malik's "patients" had been observed buying and selling controlled substances at the sting house was relevant to proving the existence of the conspiracy and the activities of the unindicted coconspirators. The court did not abuse its discretion by admitting the testimony over the relevancy objections. Counsel did not object on the ground that the testimony was inflammatory, and the court did not commit plain error by allowing it.
 
 
 8
 Malik contends that the testimony constituted prosecutorial misconduct, citing United States v. Solivan, 937 F.2d 1146 (6th Cir.1991), which disapproved a prosecutor's remarks during closing argument regarding the war on drugs. This argument is patently meritless. The testimony here was directly relevant to the nonmedical uses to which Malik's patients were putting their prescriptions, and was neither a broad plea for a larger societal agenda nor a statement attributable to the prosecutor himself.
 
 
 9
 Malik further contends that comments made by the prosecutor during closing argument constituted prosecutorial misconduct. The comments were made during the prosecutor's rebuttal, in direct response to comments by defense counsel. Furthermore, the court acted quickly to cure any error by giving an impromptu cautionary instruction immediately following the rebuttal, before proceeding to the written instructions. See United States v. Clark, 982 F.2d 965, 969 (6th Cir.1993).
 
 
 10
 Malik also argues that the court's failure to instruct the jury on multiple conspiracies was reversible error. This contention is also meritless. Because he did not request such an instruction, he can prevail only by showing that its omission was "plain and clearly prejudicial error." United States v. Rugiero, 20 F.3d 1387, 1391 (6th Cir.), cert. denied, 115 S.Ct. 208 (1994); see also United States v. Taylor, --- F.3d ----, 1996 WL 705886, at * 3 (6th Cir. Dec. 10, 1996). To prove such error, Malik must show "the evidence can reasonably be construed only as supporting a finding of multiple conspiracies." United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982) (emphasis added); accord Rugiero, 20 F.3d at 1391. First, Malik asserts that the evidence did not point to a single conspiracy because there was no proof of an overarching plan, citing Kotteakos v. United States, 328 U.S. 750 (1946). The evidence in this case, unlike that in Kotteakos, does support a possible finding of a single conspiracy. Cf. id. at 755. Second, the evidence in this case tended to show that Malik was involved in a conspiracy with a number of individuals, his "patients," not that they were involved in multiple conspiracies, of which he was a participant in only one. See Warner, 690 F.2d at 549 (holding that the fact that each member of a conspiracy did not know all the members or know of all the activities did not create multiple conspiracies). In Kotteakos, the error was that the evidence proved the existence of thirty-five separate conspiracies, each involving different defendants, and the court instructed the jury that it could find only one conspiracy, thereby imputing the activities of all thirty-five conspiracies to every defendant. See Kotteakos, 328 U.S. at 771. Here, the overarching plan on which the government built its case against Malik was a plan to redistribute controlled substances illegally, with Malik as a supplier. Furthermore, he has not demonstrated resulting prejudice. See United States v. Mack, 837 F.2d 254, 258 (6th Cir.1988) (" 'Reversal is required only where substantial rights of the appellants are involved.' ") (quoting United States v. Grunsfeld, 558 F.2d 1231, 1238 (6th Cir.), cert. denied, 434 U.S. 872 (1977)).
 
 B
 
 11
 Malik further contends that trial counsel's failure to object with regard to the above issues rendered the representation constitutionally inadequate. This court generally declines to address ineffective assistance claims on direct appeal, preferring to leave the issue for post-conviction proceedings pursuant to 28 U.S.C. § 2255. See United States v. Seymour, 38 F.3d 261, 263 (6th Cir.1994); United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991). We see nothing in this case to cause us to depart from that practice.
 
 C
 
 12
 Malik also challenges the constitutionality of the statute under which he was convicted, citing United States v. Lopez, 115 S.Ct. 1624 (1995). He contends that 21 U.S.C. § 841(a)(1) is unconstitutional as applied to him because the conduct at issue (prescribing drugs without a legitimate medical purpose) is physician conduct and measured by standards for physicians, which are regulated by the state of Michigan and therefore intrastate in nature. He argues that the charges under 841(a)(1) "contain no jurisdictional element which would ensure, through case-by-case inquiry, that the physician conduct in question affects interstate commerce." Defendant-Appellant's Br. at 39. This argument is completely without merit.
 
 
 13
 This court has held that the Controlled Substances Act, which includes § 841(a)(1), is within Congress's power under the Commerce Clause. United States v. Scales, 464 F.2d 371, 375 (6th Cir.1972); see also United States v. Tucker, 90 F.3d 1135, 1140-41 (6th Cir.1996) (holding in a case under § 860(a) that Lopez did not give the court cause to reconsider Scales ). Furthermore, the law in this circuit is clear that Lopez does not require a case-by-case jurisdictional finding "where the activity, like drug trafficking, is of a kind that always implicates interstate commercial concerns." Tucker, 90 F.3d at 1141; United States v. McHenry, 97 F.3d 125, 129 (6th Cir.1996) (holding that a statute that is "a regulation of economic activity ... withstands constitutional scrutiny even without a demonstration that each individual instance of such activity affects interstate commerce"). See also United States v. Genao, 79 F.3d 1333, 1336 (2d Cir.1996) ("Because narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant.").
 
 
 14
 Malik's attempt to focus the constitutional inquiry on the fact that physician conduct is a matter of state concern is untenable; he ignores the fact that the charges arose from the economic activity of distributing regulated narcotics, the effect of which on interstate commerce is well-established and recognized.
 
 III
 
 15
 Malik also challenges his sentence on several grounds. He contends that the court based the sentence on evidence not included in the indictment, that the calculation of the quantity of cough syrup should have been based only on the amount of the active ingredient, and that the court should have reduced the quantity of cough syrup because of sentence manipulation by the police.
 
 
 16
 The district court's findings of fact underlying application of the sentencing guidelines, including findings of fact regarding the amount of drugs on which the sentence will be based, are reviewed under a clearly erroneous standard. United States v. Mahaffey, 53 F.3d 128, 131 (6th Cir.1995); United States v. Ward, 68 F.3d 146, 149 (6th Cir.1995), cert. denied, 116 S.Ct. 1028 (1996).
 
 
 17
 If a defendant fails to object to an error at sentencing, he forfeits appeal as to that error. United States v. Barajas-Nunez, 91 F.3d 826, 830 (6th Cir.1996) (citing United States v. Olano, 507 U.S. 725, 731 (1993)). Such an error will be reviewed only for plain error that affects the substantial rights of the defendant. Fed.R.Crim.P. 52(b); United States v. Sherrod, 33 F.3d 723, 724-25 (6th Cir.1994), cert. denied, 115 S.Ct. 1317 (1995). Because Malik failed to raise his objection based on sentencing manipulation, that issue will be reviewed, if at all, for plain error. If, however, this argument is a challenge to the court's failure to depart downward, it cannot be appealed unless it appears the trial court was not aware of its discretion to do so. United States v. Kraig, 99 F.3d 1361, 1371 (6th Cir.1996); United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990).
 
 
 18
 * Malik argues that the court improperly based the offense calculation under the Sentencing Guidelines on a drug quantity based on Diana Lyles's chart. Although the prescriptions recorded in her chart were not included in the indictment and she did not testify at the trial or sentencing, her chart was entered into evidence and was one of the charts on which Dr. Jeffrey Stross, the prosecution's expert witness, based his report and testimony regarding the medical purposes of Malik's prescriptions.
 
 
 19
 The law of this circuit is clear that the calculation for sentencing can include relevant conduct other than that proved at trial, provided that the court finds it proved by a preponderance of the evidence. United States v. Silverman, 976 F.2d 1502, 1513 (6th Cir.1992) (en banc), cert. denied, 507 U.S. 990 (1993). Under the United States Sentencing Guidelines ("U.S.S.G."), the district court "[cannot] hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 990 (1990); accord United States v. Thomas, 11 F.3d 620, 631 (6th Cir.1993), cert. denied, 114 S.Ct. 1570 (1994). The drug quantity contained in the indictment and proven at trial does not determine the minimum sentence for a conviction under §§ 841(a)(1) and 846; the finding of the relevant quantity is properly left to the judge at the sentencing stage. See United States v. Jinadu, 98 F.3d 239, 247-48 (6th Cir.1996); United States v. Hodges, 935 F.2d 766, 769-70 (6th Cir.), cert. denied, 502 U.S. 889 (1991).
 
 
 20
 The defense objected to the court's reliance on the Lyles chart for calculating the base offense level, arguing that the chart did not fit the prosecution's theory because it included some medical evaluations and prescriptions for noncontrolled substances. The prosecution argued that Lyles's chart was representative of the pattern of Malik's prescriptions, and produced a voluntary statement made by Lyles to the FBI indicating that she, like the three former patients who had been cooperating witnesses at trial, had obtained prescriptions for controlled substances from Malik for no legitimate medical purpose and had resold the drugs.
 
 
 21
 The court found by a preponderance of the evidence that Lyles's chart and her statement to the FBI demonstrated that the prescriptions for controlled substances that Malik gave her over a period of five years were representative of the pattern of behavior for which Malik had been convicted. In fact, the district judge commented that the drug quantity used for the calculation might well represent an undercounting of the amount for which Malik had been convicted. Given the evidence produced at Malik's trial to show a pattern of repeated prescriptions to a number of individuals, the district court's reliance on Lyles's chart was not clearly erroneous.
 
 B
 
 22
 Malik also challenges the court's calculation of the amount of Tussionex. Forty-three percent of the base offense level calculation was based on the marijuana equivalency of seven prescriptions for six-ounce bottles of Tussionex. Arguing that the medium, a suspension liquid, "far exceeds the weight of the controlled substance," Malik contends that the marijuana equivalency should not be calculated using the entire forty-two ounces of Tussionex.
 
 
 23
 The drug quantity table provided in the Sentencing Guidelines specifically states that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c)n.* (1994 ed.). As the government points out, the Sentencing Commission amended the drug equivalency guideline to address concerns about total weight of prescription drugs, yet the marijuana equivalency for Tussionex was not changed. See U.S.S.G. App.C, amend. 517; U.S.S.G. § 2D1.1(c)n.* (1995 ed.). The Eleventh Circuit has upheld the application of the guideline equivalency for Tussionex, explicitly rejecting an argument similar to Malik's as "merely an indirect attempt to use a net weight method" in clear contradiction of the guideline. United States v. Lazarchik, 924 F.2d 211, 212, 214 (11th Cir.), cert. denied, 502 U.S. 827 (1991). Malik's argument is likewise meritless.
 
 C
 
 24
 Malik also contends that the court should have reduced the amount of Tussionex because the officers sought prescriptions for Tussionex in order to inflate the drug amount calculation at sentencing. Even if this argument is not deemed forfeited, it fails on the merits. This circuit has not recognized sentence manipulation by law enforcement officials as a basis for departing from the Sentencing Guidelines. See United States v. Jones, --- F.3d ----, 1996 WL 720716, at * 5 (6th Cir. Dec. 17, 1996). The cases from other circuits that Malik cites recognize sentence manipulation only as a basis for downward departure, see United States v. Barth, 990 F.2d 422 (8th Cir.1993), or as a basis for appeal, but only in "the extreme and unusual case," see United States v. Montoya, 62 F.3d 1, 4 (1st Cir.1995). This is not such an extraordinary case. We hold that it was not plain error for the district court not to reduce the drug quantity on this basis.
 
 
 25
 For the reasons discussed above, we AFFIRM the conviction and sentence.
 
 
 
 [1]
 The prescriptions involved in this case were for Tylenol 3 (which contains 30 mg of codeine) and Tylenol 4 (60 mg), which both come in tablet form, and Tussionex, a cough syrup that contains a synthetic equivalent of codeine in a suspension liquid. All three are schedule III narcotics, according to the Physicians' Desk Reference (1996). Malik has repeatedly tried to minimize his prescriptions as being merely Tylenol and cough syrup
 
 
 [2]
 Even if the court does find an abuse of discretion, a new trial is not required unless the defendant demonstrates an effect on his substantial rights--i.e., prejudice. Bonds, 12 F.3d at 554. See also Fed.R.Crim.P. 52(a) (harmless error)